(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BADGEROW *v.* WALTERS ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 20–1143. Argued November 2, 2021—Decided March 31, 2022

The Federal Arbitration Act authorizes a party to an arbitration agreement to petition a federal court for various forms of relief. But the Act's authorization of such petitions does not itself create the subject-matter jurisdiction necessary for a federal court to resolve them. Rather, the federal court must have an "independent jurisdictional basis" to do so. *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. 576, 582. In *Vaden* v. *Discover Bank*, 556 U. S. 49, this Court assessed whether there was a jurisdictional basis to decide an FAA Section 4 petition to compel arbitration by means of examining the parties' underlying dispute. The Court reasoned that specific language in Section 4 instructed a federal court to "look through" the petition to the "underlying substantive controversy." *Id.,* at 62. If the dispute underlying a Section 4 petition falls within the court's jurisdiction—for example, by presenting a federal question—then the court may rule on the petition to compel arbitration.

In this case, the question presented is whether that same "look-through" approach to jurisdiction applies to applications to confirm or vacate arbitral awards under Sections 9 and 10 of the FAA. Petitioner Denise Badgerow initiated an arbitration proceeding against her employer's principals (collectively, Walters), alleging that she was unlawfully terminated. After arbitrators dismissed Badgerow's claims, she filed suit in Louisiana state court to vacate the arbitral award. Walters removed the case to Federal District Court and applied to confirm the award. Badgerow then moved to remand the case to state court, arguing that the federal court lacked jurisdiction to resolve the parties' requests—under Sections 10 and 9 of the FAA, respectively—to vacate or confirm the award. The District Court applied *Vaden*'s look-through approach, finding jurisdiction in the federal-law claims contained in

Badgerow's underlying employment action. The District Court acknowledged that Sections 9 and 10 of the FAA lack the distinctive text on which *Vaden* relied, but it applied the look-through approach anyway so that "consistent jurisdictional principles" would govern all kinds of FAA applications. The Fifth Circuit affirmed.

*Held*: *Vaden*'s "look-through" approach to determining federal jurisdiction does not apply to requests to confirm or vacate arbitral awards under Sections 9 and 10 of the FAA. Pp. 4–16.

(a) Congress has granted federal district courts jurisdiction over two main kinds of cases: suits between citizens of different States as to any matter valued at more than $75,000 (diversity cases), 28 U. S. C. §1332(a), and suits "arising under" federal law (federal-question cases), §1331. Normally, a court has federal-question jurisdiction whenever federal law authorizes an action. But because this Court has held that the FAA's provisions do not themselves support federal jurisdiction, a federal court must find an independent basis for jurisdiction to resolve an arbitral dispute. In this case, neither application reveals a jurisdictional basis on its face. So to find an independent basis for jurisdiction, the District Court had to look through the Section 9 and 10 applications to the underlying substantive dispute, where a federal-law claim satisfying §1331 indeed exists.

In *Vaden*, this Court approved the look-through approach for a Section 4 petition by relying on that section's express language. That language provides that a party to an arbitration agreement may petition for an order to compel arbitration in a "United States district court which, save for [the arbitration] agreement, would have jurisdiction" over "the controversy between the parties." "The phrase 'save for [the arbitration] agreement,'" the Court stated, "indicates that the district court should assume the absence of the arbitration agreement and determine whether [the court] 'would have jurisdiction . . .' without it" by looking through to the "underlying substantive controversy" between the parties. 556 U. S., at 62.

Sections 9 and 10 of the FAA contain none of the statutory language on which *Vaden* relied. So under ordinary principles of statutory construction, the look-through method should not apply. "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act," this Court generally takes the choice to be deliberate. *Collins* v. *Yellen*, 594 U. S. ___, ___. That holds true for jurisdictional questions, as federal "district courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp.* v. *Allapattah Services, Inc.*, 545 U. S. 546, 552. Because a statutory basis for look-through jurisdiction is lacking in Sections 9 and 10, the Court cannot reach the same result here as in *Vaden*. Pp. 4–9.

  (b) Walters presents a two-part argument to justify exercising jurisdiction here. Walters first claims that Section 4's language does not authorize look-through jurisdiction, but is only a capacious venue provision designed to give applicants a broad choice among federal courts possessing jurisdiction. Walters next construes Section 6—which requires any FAA application to "be made and heard in the manner provided by law for the making and hearing of motions"—to provide the basis for an FAA-wide look-through rule.

  Walters's reading of Section 4 does not comport with how *Vaden* understood Section 4 or with the actual text of that provision, which never mentions venue, and refers only to jurisdiction. And Walters's Section 6 argument fares no better. Courts do not possess jurisdiction to decide ordinary motions by virtue of the look-through method. So Congress would not have prescribed that method by telling courts, as Section 6 does, to treat FAA applications like motions. Pp. 9–12.

  (c) Walters also makes several policy arguments preaching the virtues of adopting look-through as a uniform jurisdictional rule. Walters claims that a uniform rule will promote "administrative simplicity"; that the look-through approach will be "easier to apply" than a test grounding jurisdiction on the face of the FAA application itself; and that the look-through rule will provide federal courts with more comprehensive control over the arbitration process. Brief for Respondents 27, 28. But "[e]ven the most formidable policy arguments cannot overcome a clear statutory directive." *BP p.l.c.* v. *Mayor and City Council of Baltimore*, 593 U. S. ___, ___. And anyway, Walters oversells the superiority of his proposal. First, uniformity in and of itself provides no real advantage here because courts can easily tell whether to apply look-through or the normal jurisdictional rules. Second, the use of those ordinary rules, in the context of arbitration applications, is hardly beyond judicial capacity. And third, there are good reasons why state, rather than federal, courts should handle applications like the ones in this case. Pp. 12–16.

975 F. 3d 469, reversed and remanded.

  KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, SOTOMAYOR, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. BREYER, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 20–1143

———————

## DENISE A. BADGEROW, PETITIONER *v.* GREG WALTERS, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[March 31, 2022]

JUSTICE KAGAN delivered the opinion of the Court.

The Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, authorizes a party to an arbitration agreement to seek several kinds of assistance from a federal court. Under Section 4, for example, a party may ask the court to compel an arbitration proceeding, as the agreement contemplates. And under Sections 9 and 10, a party may apply to the court to confirm, or alternatively to vacate, an arbitral award.

Yet the federal courts, as we have often held, may or may not have jurisdiction to decide such a request. The Act's authorization of a petition does not itself create jurisdiction. Rather, the federal court must have what we have called an "independent jurisdictional basis" to resolve the matter. *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. 576, 582 (2008).

In *Vaden* v. *Discover Bank*, 556 U. S. 49 (2009), we assessed whether there was a jurisdictional basis to decide a Section 4 petition to compel arbitration by means of examining the parties' underlying dispute. The text of Section 4, we reasoned, instructs a federal court to "look through" the

petition to the "underlying substantive controversy" between the parties—even though that controversy is not before the court. *Id.*, at 62. If the underlying dispute falls within the court's jurisdiction—for example, by presenting a federal question—then the court may rule on the petition to compel. That is so regardless whether the petition alone could establish the court's jurisdiction.

The question presented here is whether that same "look-through" approach to jurisdiction applies to requests to confirm or vacate arbitral awards under the FAA's Sections 9 and 10. We hold it does not. Those sections lack Section 4's distinctive language directing a look-through, on which *Vaden* rested. Without that statutory instruction, a court may look only to the application actually submitted to it in assessing its jurisdiction.

I

This case grows out of the arbitration of an employment dispute. Petitioner Denise Badgerow worked as a financial advisor for REJ Properties, a firm run by respondents Greg Walters, Thomas Meyer, and Ray Trosclair. (For ease of reference, we refer from now on only to Walters.) Badgerow's contract required her to bring claims arising out of her employment to arbitration, rather than to court. So when she was (in her view, improperly) fired, she initiated an arbitration action against Walters, alleging unlawful termination under both federal and state law. The arbitrators sided with Walters, dismissing Badgerow's claims.

What happened afterward—when Badgerow refused to give up—created the jurisdictional issue we address today. Believing that fraud had tainted the arbitration proceeding, Badgerow sued Walters in Louisiana state court to vacate the arbitral decision. Walters responded by removing the case to Federal District Court—and, once there, applying to confirm the arbitral award. Finally, Badgerow moved to

remand the case to state court, arguing that the federal court lacked jurisdiction over the parties' requests—under Sections 10 and 9, respectively—to vacate or confirm the award.

The District Court assessed its jurisdiction under the look through approach this Court adopted in *Vaden* v. *Discover Bank*. See 2019 WL 2611127, *1 (ED La., June 26, 2019). That approach, as just noted, allows a federal court to exercise jurisdiction over an FAA application when the parties' underlying substantive dispute would have fallen within the court's jurisdiction. See *supra*, at 1–2. The District Court acknowledged that *Vaden* involved a different kind of arbitration dispute: It concerned a petition to compel arbitration under the FAA's Section 4, rather than an application to confirm or vacate an arbitral award under Section 9 or 10. And *Vaden*'s "reasoning was grounded on specific text" in Section 4 that Sections 9 and 10 "do[] not contain." 2019 WL 2611127, *2. But the court thought it should apply the look-through approach anyway, so that "consistent jurisdictional principles" would govern all kinds of FAA applications. *Ibid.* And under that approach, the court had jurisdiction because Badgerow's underlying employment action raised federal-law claims. The court thus went on to resolve the dispute over whether fraud had infected the arbitration proceeding. Finding it had not, the court granted Walters's application to confirm, and denied Badgerow's application to vacate, the arbitral award.

The United States Court of Appeals for the Fifth Circuit affirmed the District Court's finding of jurisdiction, relying on a just-issued Circuit precedent. See 975 F. 3d 469, 472–474 (2020) (citing *Quezada* v. *Bechtel OG&C Constr. Servs., Inc.*, 946 F. 3d 837, 843 (2020)). In that decision, the Fifth Circuit had echoed the reasoning of the District Court here. Yes, the language of Section 4 directing use of the look-through approach "is in fact absent in" the FAA's other sec-

tions. 946 F. 3d, at 842. But, the court continued, a "principle of uniformity" applying to the FAA "dictates using the same approach for determining jurisdiction under each section of the statute." *Ibid.*; but see *id.*, at 845–846 (Ho, J., dissenting) (rejecting that asserted principle in favor of "[f]idelity to text"). As applied to this case, that analysis meant that the district court had jurisdiction over Walters's Section 9 and Badgerow's Section 10 applications.

Courts have divided over whether the look-through approach used in *Vaden* can establish jurisdiction in a case like this one—when the application before the court seeks not to compel arbitration under Section 4 but to confirm, vacate, or modify an arbitral award under other sections of the FAA.[1] We granted certiorari to resolve the conflict, 593 U. S. \_\_\_ (2021), and now reverse the judgment below.

## II

The district courts of the United States are courts of limited jurisdiction, defined (within constitutional bounds) by federal statute. See, *e.g.*, *Kokkonen* v. *Guardian Life Ins. Co. of America*, 511 U. S. 375, 377 (1994). Congress has granted those courts jurisdiction over two main kinds of cases. District courts have power to decide diversity cases—suits between citizens of different States as to any matter valued at more than $75,000. See 28 U. S. C. §1332(a). And they have power to decide federal-question cases—suits "arising under" federal law. §1331. Typically,

––––––––––

[1] Compare *Quezada* v. *Bechtel OG&C Constr. Servs., Inc.*, 946 F. 3d 837, 843 (CA5 2020) (holding that the look-through approach applies to applications to confirm, vacate, or modify an arbitral award); *Ortiz-Espinosa* v. *BBVA Securities of P. R., Inc.*, 852 F. 3d 36, 47 (CA1 2017) (same); *Doscher* v. *Sea Port Group Securities, LLC*, 832 F. 3d 372, 381–388 (CA2 2016) (same); *McCormick* v. *America Online, Inc.*, 909 F. 3d 677, 680–684 (CA4 2018) (same), with *Goldman* v. *Citigroup Global Markets Inc.*, 834 F. 3d 242, 252–255 (CA3 2016) (holding that the look-through approach does not apply to those applications); *Magruder* v. *Fidelity Brokerage Servs.*, 818 F. 3d 285, 287–289 (CA7 2016) (same).

an action arises under federal law if that law "creates the cause of action asserted." *Gunn* v. *Minton*, 568 U. S. 251, 257 (2013). So when federal law authorizes the action, the party bringing it—once again, typically—gets to go to federal court.

But that is not necessarily true of FAA-created arbitration actions. As noted above, the FAA authorizes parties to arbitration agreements to file specified actions in federal court—most prominently, petitions to compel arbitration (under Section 4) and applications to confirm, vacate, or modify arbitral awards (under Sections 9 through 11). See *supra*, at 1. But those provisions, this Court has held, do not themselves support federal jurisdiction. See *Hall Street*, 552 U. S., at 581–582; *Vaden*, 556 U. S., at 59. (Were it otherwise, every arbitration in the country, however distant from federal concerns, could wind up in federal district court.) A federal court may entertain an action brought under the FAA only if the action has an "independent jurisdictional basis." *Hall Street*, 552 U. S., at 582. That means an applicant seeking, for example, to vacate an arbitral award under Section 10 must identify a grant of jurisdiction, apart from Section 10 itself, conferring "access to a federal forum." *Vaden*, 556 U. S., at 59. If she cannot, the action belongs in state court. The FAA requires those courts, too, to honor arbitration agreements; and we have long recognized their "prominent role" in arbitral enforcement. *Ibid.*; see *id.,* at 71; *Southland Corp.* v. *Keating*, 465 U. S. 1, 12–16 (1984).[2]

————————

[2] This Court has held that the FAA's core substantive requirement— Section 2's command to enforce arbitration agreements like other contracts—applies in state courts, just as it does in federal courts. See *Southland Corp.*, 465 U. S., at 12–16. We have never decided whether the FAA's more procedural provisions, including Sections 4 and 9 through 11, also apply in state courts. See *Vaden*, 556 U. S., at 71, n. 20; see also *post,* at 7 (BREYER, J., dissenting) (expressing concern that they do not). But we have made clear that Section 2 "carries with it" a duty for States to provide certain enforcement mechanisms equivalent to the

The issue here is about where a federal court should look to determine whether an action brought under Section 9 or 10 has an independent jurisdictional basis. An obvious place is the face of the application itself. If it shows that the contending parties are citizens of different States (with over $75,000 in dispute), then §1332(a) gives the court diversity jurisdiction. Or if it alleges that federal law (beyond Section 9 or 10 itself) entitles the applicant to relief, then §1331 gives the court federal-question jurisdiction. But those possibilities do Walters no good. He and Badgerow are from the same State. And their applications raise no federal issue. Recall that the two are now contesting not the legality of Badgerow's firing but the enforceability of an arbitral award. That award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims. See *Vaden*, 556 U. S., at 63. And quarrels about legal settlements—even settlements of federal claims—typically involve only state law, like disagreements about other contracts. See *Kokkonen*, 511 U. S., at 378–382. So the District Court here, as Walters recognizes, had to go beyond the face of the Section 9 and 10 applications to find a basis for jurisdiction. See Brief for Respondents 26–27. It had to proceed downward to Badgerow's employment action, where a federal-law claim satisfying §1331 indeed exists. In other words, the court had to look through the Section 9 and 10 applications to the underlying substantive dispute, although that dispute was not before it. Could the court do so?

_____

FAA's. See *Vaden*, 556 U. S., at 71 (referring specifically to Sections 3 and 4). And most, if not all, States in fact provide procedural vehicles, similar to those in the FAA, to enforce arbitration agreements—including, as here, to resolve post-arbitration disputes by means of confirming, modifying, or vacating arbitral awards. See, *e.g.,* Revised Uniform Arbitration Act of 2000 §§22–24, 7 U. L. A. 26 (2009) (adopted in 21 States and the District of Columbia); Cal. Civ. Proc. Code Ann. §§1285–1287.6 (West 2022); N. Y. Civ. Prac. Law Ann. §§7510–7511 (West 2022).

In *Vaden,* this Court approved the look-through approach for a Section 4 petition, relying on that section's express language. Under Section 4, a party to an arbitration agreement may petition for an order to compel arbitration in a "United States district court which, save for [the arbitration] agreement, would have jurisdiction" over "the controversy between the parties."[3] That text, we stated, "drives our conclusion that a federal court should determine its jurisdiction by 'looking through' a §4 petition to the underlying substantive controversy"—to see, for example, if that dispute "'arises under' federal law." 556 U. S., at 62.

To show why that is so, we proceeded methodically through Section 4's wording. "The phrase 'save for [the arbitration] agreement,'" we began, "indicates that the district court should assume the absence of the arbitration agreement and determine whether [the court] 'would have jurisdiction . . .' without it." *Ibid.* (first alteration in original). But "[j]urisdiction over what?" *Ibid.* "The text of Section 4," we continued, "refers us to 'the controversy between the parties.'" *Ibid.* And that "controversy," we explained, could not mean the dispute before the court about "the existence or applicability of an arbitration agreement"; after all, the preceding save-for clause had just "direct[ed] courts" to assume that agreement away. *Id.*, at 63. The "controversy between the parties" instead had to mean their "underlying substantive controversy." *Id.*, at 62 (internal quotation marks omitted). "Attending to the language" of

_____

[3] In full, the relevant sentence of Section 4 reads: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

Section 4 thus required "approv[ing] the 'look through' approach" as a means of assessing jurisdiction over petitions to compel arbitration. *Ibid.* The opposite view was not merely faulty; it was "textual[ly] implausib[le]." *Id.*, at 65.

But Sections 9 and 10, in addressing applications to confirm or vacate an arbitral award, contain none of the statutory language on which *Vaden* relied. Most notably, those provisions do not have Section 4's "save for" clause. They do not instruct a court to imagine a world without an arbitration agreement, and to ask whether it would then have jurisdiction over the parties' dispute. Indeed, Sections 9 and 10 do not mention the court's subject-matter jurisdiction at all.[4] So under ordinary principles of statutory construction, the look-through method for assessing jurisdiction should not apply. "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act," we generally take the choice to be deliberate. *Collins* v. *Yellen*, 594 U. S. ___, ___ (2021) (slip op., at 23) (internal quotation marks omitted). We have no warrant to redline the FAA, importing Section 4's consequential language into provisions containing nothing like it. Congress could have replicated Section 4's look-through instruction in Sections 9 and 10. Or for that matter, it could have drafted a global look-through provision, applying the approach throughout the FAA. But Congress did neither. And its decision governs.

——————

[4] Section 9 provides, in relevant part, that if an arbitration agreement states "that a judgment of the court shall be entered upon the [arbitral] award," then a "party to the arbitration may apply" within a year to the federal court located where the award was made (or any other court specified) "for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected" as the Act otherwise prescribes.

Section 10 provides, in relevant part, that a United States court "may make an order vacating the award upon the application of any party to the arbitration" if the award is tainted in any of four specified ways.

Nothing in that conclusion changes because a jurisdictional question is before us. The federal "district courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp.* v. *Allapattah Services, Inc.*, 545 U. S. 546, 552 (2005). And the jurisdiction Congress confers may not "be expanded by judicial decree." *Kokkonen*, 511 U. S., at 377. Those bedrock principles prevent us from pulling look-through jurisdiction out of thin air—from somehow finding, without textual support, that federal courts may use the method to resolve various state-law-based, non-diverse Section 9 and 10 applications. The look-through rule is a highly unusual one: It locates jurisdiction not in the action actually before the court, but in another controversy neither there nor ever meant to be. We recognized that rule in *Vaden* because careful analysis of Section 4's text showed that Congress wanted it applied to petitions brought under that provision. See 556 U. S., at 62–65. But Congress has not so directed in Sections 9 and 10. Congress has not authorized a federal court to adjudicate a Section 9 or 10 application just because the contractual dispute it presents grew out of arbitrating different claims, turning on different law, that (save for the parties' agreement) could have been brought in federal court. And because a statutory basis for look-through jurisdiction is lacking here, we cannot reach the same result as in *Vaden*: That would indeed be jurisdictional "expan[sion] by judicial decree." *Kokkonen*, 511 U. S., at 377.

Walters contests that view of the statute. Unlike the Courts of Appeals to have adopted his position, including the Fifth Circuit below, see *supra*, at 3–4, he offers a reading of the FAA's text to justify exercising jurisdiction here.[5]

_____

[5] By contrast, the dissenting opinion reads, from start to finish, more like the decisions of the courts below: Even when that opinion finally turns to the FAA's text, it emphasizes something much like the lower courts' uniformity principle. See *post,* at 9–11; *supra,* at 3–4. Because, the dissent says, all the FAA's sections "describe connected components

Walters's argument comes in two parts. First, Walters says, the language in Section 4 that *Vaden* construed does not in fact authorize the use of the look-through jurisdictional method. In his view, that sentence is only a capacious "*venue* provision," serving to "expand[] venue to the limits of [federal] jurisdiction" (and thus to give an applicant a broad choice *among* federal courts possessing jurisdiction). Brief for Respondents 12, 23. Second, Walters claims that Section 6 provides the basis for an FAA-wide look-through jurisdictional rule. Under Section 6, any FAA application "shall be made and heard in the manner provided by law for the making and hearing of motions." That provision, Walters claims, requires use of the look-through approach because "[f]ederal courts have jurisdiction over motions when they have jurisdiction over the underlying action." Brief for Respondents 19 (internal quotation marks omitted). So to recap Walters's theory: Section 4 does not establish any jurisdictional rule for applications to compel in particular, while Section 6 establishes the look-through jurisdictional rule for all kinds of FAA applications.

But Walters's understanding of Section 4 does not comport with what it says. The language of that provision never mentions "venue"; it refers only to "jurisdiction." That is a signal, sharp and clear, that the section provides a jurisdictional rule. And even suppose (against all odds) that Congress had meant to state the venue rule Walters proposes without ever using the word "venue." In that

_____

of a single matter" (namely, a "court's arbitration-related enforcement power"), and because those provisions serve the same "general purpose[]," the statute "permits" a court to hold that "Section 4's jurisdictional rule should apply throughout." *Post,* at 9–12. But the (nigh-inevitable) connection among a statute's diverse provisions does not give a court carte blanche to move rules or concepts from any one section to any or all others. For the reasons already stated, we cannot read this non-uniform statute—setting out a jurisdictional rule in one section but conspicuously omitting it in all others—as though it applied a single rule throughout. See *supra,* at 8–9.

event, Congress could have simply permitted filing the petition in any district court with jurisdiction (or even more simply—because a court can never act without jurisdiction—in any district court). Given that (in Walters's view) the jurisdictional rule comes from another provision, Congress would not have needed to (again) spell out its content. But spelling out the rule's content—by describing the look-through method—is exactly what Section 4 does. That description can serve one purpose only: to establish jurisdiction where it would otherwise not exist.

And that is how *Vaden* understood Section 4. Our decision, like the relevant text, never once referred to venue. Instead, we spoke, throughout the opinion, of the way Section 4 provides for jurisdiction. We formulated the question presented as whether the district court could "exercise jurisdiction over [the party's] §4 petition." 556 U. S., at 53; see *id.*, at 57 (stating that "[w]e granted certiorari" to decide whether district courts could use the look-through method "to determine whether federal-question jurisdiction exists over [a] §4 petition"). And we framed our holding as about jurisdiction: "[A] federal court should determine its jurisdiction by 'looking through' a §4 petition." *Id.*, at 62; see *id.*, at 72 (ROBERTS, C. J., dissenting) (differing about the rule's application, but agreeing that a court presented with a Section 4 petition should use the look-through method "in determining whether it has jurisdiction"). In short, Section 4's "save for" text "dr[ove] our conclusion" not about venue, but about "jurisdiction." *Id.*, at 62. And so that text, as shown above, contradicts Walters's position—for it appears in Section 4 alone, rather than also in Sections 9 and 10. See *supra*, at 8–9.

Walters's theory fares no better in construing Section 6's mention of motions to prescribe a look-through rule for the whole FAA. Here, Walters commits the opposite of his fault in reading Section 4: He now reads a provision containing

no express reference to jurisdiction in fact to set out a jurisdictional rule. There may be rare contexts in which courts can, without such a reference, "infer that Congress has expanded our jurisdiction"—but this is not one. *Welch* v. *Texas Dept. of Highways and Public Transp.*, 483 U. S. 468, 474 (1987) (plurality opinion). The look-through method, as noted before, is a jurisdictional outlier. See *supra*, at 9. For Congress to prescribe it by telling courts, a la Section 6, to treat FAA applications like motions in other kinds of litigation would be not just oblique but simply bizarre. Courts, after all, do not possess jurisdiction to decide ordinary motions by virtue of the look-through method. A motion (unlike a typical FAA application) is part of a case actually in court. Jurisdiction to decide the case includes jurisdiction to decide the motion; there is no need to "look through" the motion in search of a jurisdictional basis outside the court. And if the look-through rule does not apply to motions, then Section 6's reference to motions cannot direct the look-through rule. We have formerly described that provision's function as something different: Section 6, we said, ensures that FAA applications "get streamlined treatment"—a kind of "expedited review," as compared to what a party would receive if she brought a normal contract suit. *Hall Street*, 552 U. S., at 582, and n. 3. However hard we squint, we cannot also discern in Section 6 an FAA-wide look-through rule; the only such rule in the FAA, applying only to petitions to compel, resides in Section 4.

Walters's more thought-provoking arguments sound not in text but in policy. Here, Walters—now joined by the dissent—preaches the virtues of adopting look-through as a "single, easy-to-apply jurisdictional test" that will produce "sensible" results. Brief for Respondents 28 (internal quotation marks omitted); see *post,* at 4–9 (opinion of BREYER, J.) (lauding the "advantages" of look-through's "practical consequences"). First, Walters says, a uniform jurisdic-

tional rule, applying to all FAA applications alike, will necessarily promote "administrative simplicity" because a court will not have to figure out which rule to apply. Brief for Respondents 27. Second, he claims, the look-through rule is "easier to apply" than a test that would ground jurisdiction on the face of the FAA application itself. *Id.,* at 28 (internal quotation marks omitted). In particular, he says, the latter approach confronts courts with "hard questions" about how to determine diversity jurisdiction (including its amount-in-controversy component) across a range of settings—for the Section 9 and 10 applications at issue here, as well as for Section 5 and 7 petitions (obviously not at issue) to appoint arbitrators or compel the presence of witnesses. *Id.,* at 41. (The dissent's vaunted practical "advantages" also mostly concern avoiding those diversity issues. *Post,* at 4; see *post*, at 4–7.)[6] Finally, Walters contends that only the look-through rule will provide federal courts with comprehensive control over the arbitration process, including the period after the award. The opposite position, he says, will "close the federal courthouse doors to many" post-arbitration motions, even when they grow out of disputes raising "*exclusively* federal claims." Brief for Respondents 37, 46.

Walters himself quotes back to us the topline answer to those theories, reflecting its obviousness: "Even the most formidable policy arguments cannot overcome a clear statutory directive." *Id.*, at 44 (quoting *BP p.l.c.* v. *Mayor and City Council of Baltimore*, 593 U. S. ___, ___ (2021) (slip op., at 12); alteration omitted). Walters's (and the dissent's) what-makes-best-sense assertions rest on the view that

———————
[6] The dissent's lead item in this vein concerns a Section 5 petition to appoint an arbitrator that is made "in tandem with" a Section 4 petition over which a federal court has jurisdiction. *Post,* at 5. Because Section 5 is not at issue here, we do not express any view about whether the relationship that the dissent hypothesizes would give the court jurisdiction over the appointment request.

"the FAA contains no" such clear "directive" limiting look-
through jurisdiction to Section 4.  Brief for Respondents 44–
45; see *post,* at 10.  Having rejected that view, we cannot
find much relevance in his ideas, even if plausible, about
the optimal jurisdictional rule for the FAA.  "It is not for
this Court to employ untethered notions of what might be
good public policy to expand our jurisdiction." *Whitmore* v.
*Arkansas*, 495 U. S. 149, 161 (1990).  However the pros and
cons shake out, Congress has made its call.  We will not
impose uniformity on the statute's non-uniform jurisdic-
tional rules.

    And anyway, we think Walters oversells the superiority
of his proposal.  First, uniformity in and of itself provides
no real advantage in this sphere.  A court can tell in an in-
stant whether an application arises under Section 4 or, as
here, under Section 9 or 10; so it can also tell in an instant
whether to apply the look-through method or the usual ju-
risdictional rules.  Second, the use of those ordinary rules—
most notably, relating to diversity jurisdiction—is hardly
beyond judicial capacity.  Federal courts have faced, and
federal courts have resolved, diversity questions for over
two centuries, in diverse and ever-changing legal contexts.
Throughout, they have developed workable rules; and we
see no reason to think they will do differently here.  Indeed,
past practice belies Walters's and the dissent's gloomy pre-
dictions.  Although they spin out hypotheticals designed to
make the project look ultra-confusing, they fail to identify
any actual problems that have arisen from courts'
longstanding application of diversity standards to FAA ap-
plications (without using look-through).  And Walters's so-
lution does not even avoid the (purported) difficulty of
which he complains.  For he does not claim (nor could he)
that look-through is the exclusive means of establishing
federal jurisdiction.  Even if the underlying action does not
fall within a district court's jurisdiction, the application still
might do so—say, because the parties have changed, and

are now diverse. See *supra,* at 6. So courts, on Walters's own view, will still have to resolve questions about—and develop rules for—determining diversity in the FAA context. The difference is only one of degree—and too small, under any plausible theory of statutory interpretation, to adopt Walters's proposal to rewrite the law.

Finally, we can see why Congress chose to place fewer arbitration disputes in federal court than Walters wishes. The statutory plan, as suggested above, makes Section 9 and 10 applications conform to the normal—and sensible—judicial division of labor: The applications go to state, rather than federal, courts when they raise claims between non-diverse parties involving state law. See *supra*, at 5–6. As Walters notes, those claims may have originated in the arbitration of a federal-law dispute. But the underlying dispute is not now at issue. Rather, the application concerns the contractual rights provided in the arbitration agreement, generally governed by state law. And adjudication of such state-law contractual rights—as this Court has held in addressing a non-arbitration settlement of federal claims—typically belongs in state courts. See *Kokkonen*, 511 U. S., at 381–382; *supra*, at 6. To be sure, Congress created an exception to those ordinary jurisdictional principles for Section 4 petitions to compel. But it is one thing to make an exception, quite another to extend that exception everywhere. See *post,* at 8 (disregarding this point). As this Court has often said, the "preeminent" purpose of the FAA was to overcome some judges' reluctance to enforce arbitration agreements when a party tried to sue in court instead. *E.g., Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 221 (1985). We have never detected a similar congressional worry about judges' willingness to enforce arbitration awards already made. So Congress might well have thought an expansion of federal jurisdiction appropriate for petitions to compel alone. Applications about arbitral decisions could and should follow the normal rules.

The result, as Walters laments, is to give state courts a significant role in implementing the FAA. But we have long recognized that feature of the statute. "[E]nforcement of the Act," we have understood, "is left in large part to the state courts." *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 25, n. 32 (1983); see *Vaden*, 556 U. S., at 59; *Hall Street*, 552 U. S., at 582. As relevant here, Congress chose to respect the capacity of state courts to properly enforce arbitral awards. In our turn, we must respect that evident congressional choice.

*       *       *

For the reasons stated, we reverse the judgment of the Court of Appeals for the Fifth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 20–1143

_____

## DENISE A. BADGEROW, PETITIONER *v.* GREG WALTERS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

[March 31, 2022]

JUSTICE BREYER, dissenting.

When interpreting a statute, it is often helpful to consider not simply the statute's literal words, but also the statute's purposes and the likely consequences of our interpretation. Otherwise, we risk adopting an interpretation that, even if consistent with text, creates unnecessary complexity and confusion. That, I fear, is what the majority's interpretation here will do. I consequently dissent.

I

The question presented arises in the context of the Federal Arbitration Act (FAA). 9 U. S. C. §1 *et seq.* The question is technical and jurisdictional: How does a federal court determine whether it has jurisdiction to consider a motion to confirm or vacate an arbitration award? The FAA contains several sections that seem to empower a federal court to take certain specified actions related to arbitration proceedings. These include Section 4, which gives "any United States district court" the power to "order" parties to a written arbitration agreement to "proceed" to arbitration; Section 5, which gives "the court" the power to "designate and appoint an arbitrator"; Section 7, which gives "the United States district court for the district" in which an arbitrator is sitting the power to "compel the attendance" of witnesses whom the arbitrator has "summoned"; Section 9, which

gives "the United States court in and for the district within which" an arbitration award "was made" the power to enter an "order confirming the award"; Section 10, which gives "the United States court in and for the district wherein the [arbitration] award was made" the power to "make an order vacating the award"; and Section 11, which gives "the United States court in and for the district wherein the [arbitration] award was made" the power to "modif[y] or correc[t] the award." 9 U. S. C. §§4, 5, 7, 9, 10, 11. (Here, as throughout, I have simplified the descriptions of the FAA's sections; the Appendix, *infra*, contains the full relevant statutory language.) This case directly concerns jurisdiction under Sections 9 and 10, but the Court's reasoning applies to all the sections just mentioned.

At first blush, one might wonder why there is *any* question about whether a federal court has jurisdiction to consider requests that it act pursuant to these sections. The sections' language seems explicitly to give federal courts the power to take such actions. Why does that language itself not also grant jurisdiction to act? The answer, as the Court notes, is that we have held that the FAA's "authorization of a petition does not itself create jurisdiction." *Ante*, at 1. "Rather, the federal court must have what we have called an 'independent jurisdictional basis' to resolve the matter." *Ibid.* (quoting *Hall Street Associates*, *L. L. C.* v. *Mattel*, *Inc.*, 552 U. S. 576, 582 (2008)).

We made clear how this works in *Vaden* v. *Discover Bank*, 556 U. S. 49 (2009), a case involving Section 4. As just noted, Section 4 gives a district court the power to order parties (who have entered into a written arbitration agreement) to submit to arbitration. We held "that a federal court should determine its jurisdiction by 'looking through' a §4 petition to the parties' underlying substantive controversy." *Id.*, at 62. The court asks whether it would have jurisdiction over *that* controversy, namely, whether that

underlying substantive controversy involves a federal question or diversity (a dispute between parties from different States with a value of more than $75,000). See 28 U. S. C. §§1331, 1332. If so, then the federal court has jurisdiction over a Section 4 petition asking the court to order the parties to resolve that controversy in arbitration.

The *Vaden* Court gave two reasons for adopting this "look-through" approach. The first, as the majority today emphasizes, was textual. See 556 U. S., at 62. Section 4 says that a party seeking arbitration may petition for an order compelling arbitration from

> "any United States district court which, *save for [the arbitration] agreement*, would have jurisdiction . . . in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties." (Emphasis added.)

The words "save for [the arbitration] agreement," we reasoned, tell a court not to find jurisdiction by looking to the petition to enforce the agreement itself, but instead to the underlying controversy between the parties. See *id.*, at 62–63.

The second reason, which the majority today neglects, was practical. *Id.*, at 65. To find jurisdiction only where the petition to enforce an arbitration agreement itself established federal jurisdiction, we explained, would result in "curious practical consequences," including unduly limiting the scope of Section 4 and hinging jurisdiction upon distinctions that were "'totally artificial.'" *Ibid.* (quoting 1 I. MacNeil, R. Speidel, & T. Stipanowich, Federal Arbitration Law §9.2.3.3, p. 9:21 (1995) (hereinafter MacNeil)).

Today, the majority holds that this look-through approach does not apply to Section 9 or 10 because those sections lack Section 4's "save for" language. *Ante*, at 2. This reasoning necessarily extends to Sections 5, 7, and 11 as

well, for those sections, too, lack Sections 4's "save for" language. *Ibid.* ("Without [Section 4's] statutory instruction, a court may look only to the application actually submitted to it in assessing its jurisdiction"). Although this result may be consistent with the statute's text, it creates what *Vaden* feared—curious consequences and artificial distinctions. See 556 U. S., at 65. It also creates what I fear will be consequences that are overly complex and impractical.

## II

I would use the look-through approach to determine jurisdiction under each of the FAA's related provisions—Sections 4, 5, 7, 9, 10, and 11. Doing so would avoid the same kinds of "curious practical consequences" that drove the *Vaden* Court to adopt the look-through approach in the first place. *Ibid.*; see also *Cortez Byrd Chips, Inc.* v. *Bill Harbert Constr. Co.*, 529 U. S. 193, 202 (2000) (rejecting interpretation of the FAA that "would create anomalous results"). Most notably, this approach would provide a harmonious and comparatively simple jurisdiction-determining rule— advantages that the majority's jurisdictional scheme seems to lack. Cf. *Hertz Corp.* v. *Friend*, 559 U. S. 77, 94 (2010) (rejecting "[c]omplex jurisdictional tests" in favor of "straightforward" and "[s]imple jurisdictional rules").

Consider some of the likely consequences of the majority's reading, which applies the look-through approach only to Section 4 (where the "save for" language appears), but not to the FAA's other sections (where it does not appear).

*First*, consider Section 5. That section says that, upon application of one of the parties to an arbitration agreement, "*the* court shall designate and appoint an arbitrator." 9 U. S. C. §5 (emphasis added). What happens when the look-through approach shows that the underlying controversy raises a federal question, but the application to appoint an arbitrator raises no federal question and does not establish diversity? A party could ask a federal judge to

*order* arbitration under Section 4, but they could not then ask that same (or any other) federal judge to *appoint* an arbitrator for that very same arbitration under Section 5. That does not seem to be what Congress had in mind for these neighboring provisions—provisions that appear to assume that a judge can appoint an arbitrator in tandem with ordering parties to arbitration. Moreover, how is a federal court to determine, for diversity jurisdiction purposes, the amount at stake in a motion to appoint an arbitrator without a look-through approach? Surely not by assessing the value of the arbitrator's request for pay.

*Second*, consider Section 7. It says that "upon petition the United States district court for the district in which" an arbitrator is sitting "may compel the attendance" of persons whom the arbitrator has "summoned." §7. Suppose that the underlying substantive controversy does not qualify for federal jurisdiction, meaning that a federal court would not have jurisdiction to order arbitration under Section 4. If arbitration proceeds by other means, can a federal judge nonetheless compel the attendance of a witness at that arbitration, based on diversity jurisdiction, if a request to do so shows that the summoned witness lives out of State? If there are two witnesses, one in State and one out of State, can the federal judge compel the attendance of the second, but not the first? Why would Congress have wanted parties to toggle between federal and state court when seeking judicial enforcement of summons issued during a single arbitration?

And at a more basic level, *who* are the relevant parties to a Section 7 request when determining, for diversity purposes, whether the Section 7 dispute is between citizens of different States? The arbitrator and summoned witness? The parties in arbitration? Only the "summoning" party and the witness? Compare *Washington National Insurance Co.* v. *OBEX Group LLC*, 958 F. 3d 126, 134 (CA2 2020)

(evaluating diversity based on summoning party and witness), with *Amgen, Inc.* v. *Kidney Center of Del. Cty. Ltd.*, 95 F. 3d 562, 567–568 (CA7 1996) (evaluating diversity based on parties in arbitration). And assume that a federal court finds it does have jurisdiction over a Section 7 request, even though the underlying controversy involves neither a federal question nor diversity. "Why would Congress have wanted federal courts to intervene to enforce a subpoena issued in an arbitration proceeding involving a controversy that itself is not important enough, from a federalism standpoint, to warrant federal-court oversight?" *Maine Community Health Options* v. *Albertsons Cos.*, 993 F. 3d 720, 726 (CA9 2021) (Watford, J., concurring).

Moreover, diversity jurisdiction requires not only that the relevant parties be from different States but also that the amount in controversy exceed $75,000. See 28 U. S. C. §1332(a). How does a federal judge determine whether summoning a witness is itself worth $75,000? By examining the value of what the witness might say? By accounting for travel expenses? See *Maine Community Health*, 993 F. 3d, at 723–724. As courts have recognized, there is "very little case law to guide [them] in determining whether enforcement of an arbitration subpoena against a third party will enable someone to recover more than $75,000 in an arbitration dispute with a different party." *Id.*, at 726 (Watford, J., concurring). These and other jurisdiction-related questions do not arise if a federal judge can simply follow *Vaden*'s principle for all FAA motions: Look through the motions and determine whether there is federal jurisdiction over the underlying substantive controversy. See 556 U. S., at 62–63.

*Third*, consider now Sections 9 and 10, the FAA sections directly before us, along with Section 11. Section 9 gives "the United States court in and for the district within which [an arbitration] award was made" the power to issue "an order confirming the award." Section 10 gives the same

court the power to "vacat[e]" the award for certain specified reasons. And Section 11 gives that court the power to "modif[y] or correc[t] the award." Where the parties' underlying dispute involves a federal question (but the parties are not diverse), the majority holds that a party can ask a federal court to order arbitration under Section 4, but it cannot ask that same court to confirm, vacate, or modify the order resulting from that arbitration under Section 9, 10, or 11. But why prohibit a federal court from considering the results of the very arbitration it has ordered and is likely familiar with? Why force the parties to obtain relief—concerning arbitration of an underlying *federal*-question dispute—from a state court unfamiliar with the matter?

Or suppose that a party asks a federal court to vacate an arbitration award under Section 10 because the arbitrator "refus[ed] to hear evidence pertinent and material to the controversy." §10(a)(3). To determine at least one important aspect of diversity jurisdiction—the amount in controversy—must the court not look to the underlying dispute? The same question arises with respect to a Section 11 motion to modify an arbitral award on the ground that it "is imperfect in matter of form not affecting the merits of the controversy." §11(c).

The majority says that these and other problems require only that the parties bring their FAA requests to state courts. *Ante*, at 15–16. But we cannot be sure that state courts have the same powers under the FAA that federal courts have. The FAA says nothing about state courts; it only explicitly mentions federal courts. See §7 ("United States district court"); §9 ("the United States court"); §10 (same); §11 (same). We have never held that the FAA provisions I have discussed apply in state courts, and at least one Member of this Court has concluded that they do not apply there. See, *e.g.*, *DIRECTV, Inc.* v. *Imburgia*, 577 U. S. 47, 59 (2015) (THOMAS, J., dissenting). State courts

have reached similar conclusions.  See, *e.g.*, *Cable Connection*, *Inc.* v. *DIRECTV*, *Inc.*, 44 Cal. 4th 1334, 1351, 190 P. 3d 586, 597 (2008) (holding that §§4, 10, and 11 apply only in federal court); *In re Beck's Superior Hybrids*, *Inc.*, 940 N. E. 2d 352, 362–363 (Ind. App. 2011) (same for §7); *Henderson* v. *Summerville Ford-Mercury Inc.*, 405 S. C. 440, 450, 748 S. E. 2d 221, 226 (2013) (same for §9).

Relatedly, the majority also notes, correctly, that Section 9, 10, and 11 disputes about the enforceability of arbitral awards "typically involve only state law." *Ante*, at 6.  It thus makes sense, the majority says, that these disputes would belong primarily in state court.  See *ante*, at 15.  But the same can be said for Section 4 disputes about the enforceability of arbitration agreements.  These, too, typically involve only questions of state law.  That the dispute does not implicate federal questions thus does not explain why Congress would have wanted more federal court involvement at the Section 4 stage than during the later stages.

It may be possible to eliminate some of these problems by using a federal-question lawsuit or Section 4 motion as a jurisdictional anchor.  If a party to an arbitration agreement files a lawsuit in federal court but then is ordered to resolve the claims in arbitration, the federal court may stay the suit and possibly retain jurisdiction over related FAA motions.  See §3; *Vaden*, 556 U. S., at 65.  Similarly, some courts have held that if a federal court adjudicates a Section 4 motion to order arbitration, the court retains jurisdiction over any subsequent, related FAA motions.  See *Maine Community Health*, 993 F. 3d, at 725 (Watford, J., concurring); see also *McCormick* v. *America Online*, *Inc.*, 909 F. 3d 677, 684 (CA4 2018).  But, as *Vaden* points out, to turn jurisdiction over these later motions on the presence or absence of a federal lawsuit or Section 4 motion is to turn jurisdiction on a "'totally artificial distinction'"—particularly when the very purpose of arbitration is to avoid litigation. 556 U. S., at 65 (quoting 1 MacNeil §9.2.3.3, at 9:21).

I relate these practical difficulties in part to illustrate a more fundamental point. The majority has tried to split what is, or should be, a single jurisdictional atom—a single statute with connected parts, which parts give federal judges the power to facilitate a single arbitration proceeding from start to finish: to order arbitration; appoint an arbitrator; summon witnesses; and confirm, vacate, or modify an arbitration award. The need for simplicity, comprehension, workability, and fairness all suggest that these interrelated provisions should follow the same basic jurisdictional approach, namely, as *Vaden* explains, the look-through approach.

### III

The majority's interpretation is also at odds with what this Court has said about the purposes underlying the FAA. We have recognized that the statute reflects a clear "'policy of rapid and unobstructed enforcement of arbitration agreements.'" *Cortez Byrd Chips*, 529 U. S., at 201 (quoting *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 23 (1983)); see also *id.*, at 22 ("Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible").

We have thus interpreted the FAA to avoid "unnecessarily complicating the law and breeding litigation from a statute that seeks to avoid it." *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265, 275 (1995). "Why," we asked, "would Congress intend a test that risks the very kind of costs and delay through litigation . . . that Congress wrote the Act to help the parties avoid?" *Id.*, at 278. In other words, the FAA *is* a "sphere" in which "uniformity in and of itself provides [a] real advantage." *Ante*, at 14.

### IV

The majority's main point is straightforward: The text of

the statute compels the result. As the majority rightly points out, we cannot disregard the statutory text or "overcome a clear statutory directive." *Ante*, at 13 (quoting Brief for Respondents 44). A statute that says it applies only to "fish" does not apply to turnips. The majority also rightly points out that the "save for" language setting forth the look-through approach appears only in Section 4, and does not appear in any of the later sections.

That fact, however, does not produce the "clear statutory directive" upon which the majority relies. Nothing in the text prohibits us from applying Section 4's look-through approach to the succeeding sections. The statute does not say that Section 4's jurisdictional rule applies *only* to Section 4, or that the same look-through approach does *not* apply elsewhere. Nor does any other section provide its own jurisdictional rule that would suggest Section 4's rule should not apply there.

Moreover, when we consider Section 4's text setting forth the look-through approach, we "consider not only the bare meaning of the word[s] but also [their] placement and purpose in the statutory scheme." *Bailey* v. *United States*, 516 U. S. 137, 145 (1995), superseded by statute on other grounds as stated in *Welch* v. *United States*, 578 U. S. 120, 133 (2016). Various aspects of the FAA's text and structure suggest that Section 4's jurisdictional rule should apply throughout. Section 5, for example, which grants the power to appoint an arbitrator, simply refers to "the court." Those words, most naturally read, refer to the same court to which the immediately preceding section—Section 4—refers: a "United States district court" with jurisdiction as determined by the look-through approach. Requests under the FAA's various sections are also generally described in the text as "applications" or "motions." See §4 ("application"); §5 (same); §9 (same); §10 (same); §11 (same); see also §6; §12 ("motion to vacate, modify, or correct"); §13 ("application to confirm, modify, or correct"). This implies that the

requests are all constituent parts of one broader enforcement proceeding, not standalone disputes meriting individual jurisdictional inquiries. See, *e.g.*, *In re Wild*, 994 F. 3d 1244, 1257 (CA11 2021) (en banc) ("the term 'motion' has *never* been commonly understood to denote a vehicle for initiating a new and freestanding lawsuit"); A Modern Dictionary of the English Language 446 (1911) ("motion in court" means "an application to a court . . . to have a rule or order made which is necessary to the progress of the action").

And, more importantly, all the sections describe connected components of a single matter: a federal court's arbitration-related enforcement power. One can read these sections as a single whole, with each section providing one enforcement tool, and one section—Section 4—providing both an enforcement tool and a jurisdictional rule applicable to the entire toolbox. Read this way, the FAA provides one set of complementary mechanisms through which a federal court might facilitate a single arbitration—but only when the underlying substantive controversy is one that, jurisdictionally speaking, could be brought in a federal court had the parties not agreed to arbitrate. There is no language in any of the sections that states, or suggests, that we cannot interpret the Act in this way.

In brief, the text does not prevent us from reading the statute in a way that better reflects the statute's structure and better fulfills the statute's basic purposes. See *Allied Bruce*, 513 U. S., at 279 (adopting interpretation of FAA that "the statute's language permits" and that is more consistent with "[t]he Act's history"); *Pierce* v. *Underwood*, 487 U. S. 552, 563 (1988) (adopting outcome "that the text of the statute permits, and sound judicial administration counsels").

## V

The FAA's legislative history reinforces the view of the

statute that I have just described.  The Senate Report on
the bill that became the FAA refers to the FAA's general
purposes.  It makes clear Congress' hope to avoid proce-
dural complexity.  It refers to parties' "desire to avoid the
delay and expense of litigation."  S. Rep. No. 536, 68th
Cong., 1st Sess., 3 (1924).  Proponents of the bill thought it
would successfully serve that purpose because it would pro-
vide "very simple machinery"; "simplify legal matters"; offer
"speedy" and "plain justice"; and allow "no opportunity for
technical procedure."  Joint Hearings on S. 1005 et al. be-
fore the Subcommittees of the Committees on the Judiciary,
68th Cong., 1st Sess., 16, 26, 27, 36 (1924) (hereinafter Joint
Hearings).  These general purposes support a simplified ju-
risdictional rule.

The language of the House Report suggests more.  It sug-
gests that the bill created a *single* jurisdictional procedure,
not a set of different procedures with distinct jurisdictional
rules.  The Report says that the bill "provides *a procedure*
in the Federal courts for" enforcement of arbitration agree-
ments.  H. R. Rep. No. 96, 68th Cong., 1st Sess., 2 (1924)
(emphasis added).  "*The procedure*," the Report continues,
"is very simple, . . . reducing technicality, delay, and ex-
pense . . . ."  *Ibid.* (emphasis added).  That singular proce-
dure, the Report explains, encompasses not only the initial
request for a federal court to order arbitration under Sec-
tion 4, but subsequent requests to vacate or modify an arbi-
tration award under Sections 10 and 11 as well.  See *ibid.*

The principal drafter of the bill made the same point yet
more explicitly.  He testified that under the FAA, "Federal
courts are given jurisdiction to enforce [arbitration] agree-
ments *whenever . . . they would normally have jurisdiction
of a controversy between the parties*."  Joint Hearings 34
(statement of Julius H. Cohen) (emphasis added).  Immedi-
ately following, he said that "such enforcement" includes
the power to appoint arbitrators under Section 5, which, of
course, lacks Section 4's "save for" language.  *Ibid.*  And he

then proceeded to discuss the FAA's other sections, all without suggesting that their jurisdictional requirements were any different. *Ibid.*; see also *id.*, at 35–36.

Together, this history reinforces the interpretation of the statute that I would adopt. It suggests that Congress intended a single approach for determining jurisdiction of the FAA's interrelated enforcement mechanisms, not one approach for the mechanism provided in Section 4 and a different approach for the mechanisms provided in all other sections.

\*     \*     \*

In this dissent I hope to have provided an example of what it means to say that we do not interpret a statute's words "in a vacuum." *Abramski* v. *United States*, 573 U. S. 169, 179 (2014). Rather, we should interpret those words "with reference to the statutory context, structure, history and purpose[,] . . . not to mention common sense." *Ibid.* (internal quotation marks omitted). Here, these considerations all favor a uniform look-through approach. And the statute's language permits that approach. Interpretation of a statute must, of course, be consistent with its text. But looking solely to the text, and with a single-minded focus on individual words in the text, will sometimes lead to an interpretation at odds with the statute as a whole. And I fear that is what has happened in this case.

I suggest that by considering not only the text, but context, structure, history, purpose, and common sense, we would read the statute here in a different way. That way would connect the statute more directly with the area of law, and of human life, that it concerns. And it would allow the statute, and the law, to work better and more simply for those whom it is meant to serve. With respect, I dissent.

## APPENDIX

9 U. S. C. §§4, 5, 7, 9, 10, 11

"§4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make

an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof."

"§5. Appointment of arbitrators or umpire
    "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator."

"§7. Witnesses before arbitrators; fees; compelling attendance
    "The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of

the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States."

"§9. Award of arbitrators; confirmation; jurisdiction; procedure

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion

in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court."

"§10. Same; vacation; grounds; rehearing
   "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
   "(1) where the award was procured by corruption, fraud, or undue means;
   "(2) where there was evident partiality or corruption in the arbitrators, or either of them;
   "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
   "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
   "(b) If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
   "(c) The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5."

"§11. Same; modification or correction; grounds; order

"In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties."