**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1253**

_____

SMARTSKY NETWORKS, LLC, a Delaware limited liability company,

> Plaintiff – Appellee,

v.

DAG WIRELESS, LTD., an Israeli company; DAG WIRELESS USA, LLC, a North Carolina limited liability company; LASLO GROSS, a North Carolina resident; SUSAN GROSS, a North Carolina resident; WIRELESS SYSTEMS SOLUTIONS, LLC, a Delaware limited liability company; DAVID D. GROSS, a resident of Israel,

> Defendants – Appellants.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:20-cv-00834-TDS-LPA)

_____

Argued:  October 25, 2023                    Decided:  February 13, 2024

_____

Before DIAZ, Chief Judge, THACKER, Circuit Judge, and Julie R. RUBIN, United States District Judge for the District of Maryland, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Rubin wrote the opinion, in which Chief Judge Diaz and Judge Thacker joined.

_____

**ARGUED:** Kenneth Kyre, Jr., PINTO COATES KYRE & BOWERS, PLLC, Greensboro, North Carolina, for Appellants.  Mark S. VanderBroek, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Atlanta, Georgia, for Appellee.  **ON BRIEF:** Richard L. Pinto, Jon Ward, PINTO COATES KYRE & BOWERS, PLLC, Greensboro, North Carolina, for

Appellants.  Gavin B. Parsons, David E. Bennett, COATS + BENNETT, PLLC, Cary, North Carolina, for Appellants Wireless Systems Solutions, LLC; Laslo Gross; and Susan Gross.  S. Wade Malone, Peter L. Munk, Atlanta, Georgia, Fred M. Wood, Jr., NELSON MULLINS RILEY & SCARBOROUGH, LLP, Charlotte, North Carolina, for Appellee.

_____

RUBIN, District Judge:

Wireless Systems Solutions, LLC ("Wireless"), Laslo Gross ("Laslo"), Susan Gross ("Susan"),[1] David D. Gross ("David"),[2] DAG Wireless LTD ("DAG Israel"), and DAG Wireless USA, LLC ("DAG USA")[3] (together with DAG Israel "DAG") (collectively, "Appellants"), appeal the district court's confirmation of an arbitration award in favor of SmartSky Networks, LLC ("SmartSky"). SmartSky initially filed suit in the district court against all six Appellants for breach of contract, trade secret misappropriation and deceptive trade practices. After filing suit in the district court, SmartSky submitted an arbitration demand against Wireless for breach of contract. The arbitration tribunal ruled that all claims asserted in the district court against Wireless, save the request for entry of preliminary injunction, were to be arbitrated. DAG Israel, DAG USA, Laslo, Susan, and David voluntarily agreed to submit to arbitration with respect to SmartSky's claims filed against them. On a motion from Wireless, the district court stayed the action pending arbitration.

The arbitration tribunal found in favor of SmartSky and issued an award, which included monetary damages in favor of SmartSky and a permanent injunction against

---

[1] Laslo and Susan are husband and wife, and started Wireless in 2014.

[2] David is the son of Laslo and Susan. David created and operated DAG Israel and DAG USA.

[3] Although Appellants label DAG Israel and DAG USA "subcontractors" of Wireless, the arbitration tribunal determined DAG Israel and DAG USA were alter egos of Wireless.

Appellants.  Thereafter, SmartSky filed a motion to enforce the award; and Appellants filed a motion to vacate same.  The district court confirmed the award.  This appeal followed.  Appellants argue that pursuant to *Badgerow v. Walters,* 142 S. Ct. 1310 (2022), the district court lacked subject matter jurisdiction to enforce the arbitration award.

In *Badgerow,* the Supreme Court held that a federal district court faced with an application to enforce or vacate an arbitration award under Sections 9 or 10 of the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "FAA"), must have a basis for subject matter jurisdiction independent from the FAA and apparent on the face of the application.  The Court further held that "look-through" jurisdiction only applies to petitions to compel arbitration under Section 4 of the FAA, and that such jurisdiction is not available for Section 9 and 10 applications.  In accordance with these holdings in *Badgerow*, we find that the district court did not have an independent basis of subject matter jurisdiction to confirm the arbitration award; and reverse and remand to the district court for further proceedings consistent with our opinion.

## I.

SmartSky and Wireless are in the wireless communications industry and entered into a business relationship in 2017.  Their relationship was governed by several agreements in the form of statements of work, purchase orders and a Teaming Agreement.  Around April 2020, Wireless informed SmartSky that it believed SmartSky had repudiated and breached the Teaming Agreement; SmartSky responded that it believed Wireless had committed numerous material breaches of contracts.

4

On September 10, 2020, SmartSky filed a complaint against Appellants setting forth fourteen counts: Trade Secret Misappropriation in violation of the Defend Trade Secrets Act (18 U.S.C. §§ 1836, *et seq.*; "DTSA") (Count One); Trade Secret Misappropriation in violation of the North Carolina Trade Secret Protection Act (N.C. GEN. STAT. §§ 24-66-152, *et seq.*; "NCTSPA") (Count Two); Conspiracy to Misappropriate Trade Secrets (Count Three); Breach of Contract (Counts Four – Twelve); Unfair and Deceptive Trade Practices in violation of N.C. GEN. STAT. §§ 75.1.1 *et seq.* (Count Thirteen); and Conversion (Count Fourteen).  SmartSky's complaint was filed contemporaneously with motions for preliminary injunction and expedited discovery.  Four days later, SmartSky submitted a demand for arbitration with the American Arbitration Association (the "AAA").  The arbitration demand set forth three causes of action for breach of contract against Wireless, which was named as the sole respondent.  On September 30, 2020, Wireless asserted arbitration counterclaims against SmartSky for breach of contract, breach of the duty of good faith and fair dealing, and for declaratory judgment.

On October 27, 2020, the AAA selected three arbitrators (the "Tribunal") to resolve the arbitration action.  On December 11, 2020, Wireless moved for the Tribunal to compel arbitration of all claims and counterclaims between SmartSky and Wireless pending in the district court.  On December 22, 2020, the Tribunal granted Wireless' motion.  The Tribunal found that based on the language of the Teaming Agreement, it was mandatory that all contract, tort, and statutory claims between SmartSky and Wireless be arbitrated, save the demand for preliminary injunction.  With respect to the preliminary injunction, the Tribunal found that the language of the Teaming Agreement was permissive and

5

allowed for "interim or conservatory relief" to be sought in either arbitration or in a court identified in the Teaming Agreement. By January 13, 2021, SmartSky and all Appellants submitted their claims and counterclaims to arbitration and agreed to be bound by the result.

On January 18, 2021, Wireless, Laslo, and Susan filed a motion in the district court action to stay the proceedings pending arbitration.[4] SmartSky partially opposed the motion to stay; although it agreed that all other proceedings should be stayed, SmartSky requested that the district court hear and decide its motions for preliminary injunction. DAG USA filed a motion in the district court seeking to dismiss the district court action in light of the ongoing arbitration proceedings; SmartSky opposed the motion. The district court denied SmartSky's motions for preliminary injunction without prejudice; granted Wireless, Laslo, and Susan's motion to stay the proceedings; and denied DAG USA's motion to dismiss.

---

[4] In Wireless, Laslo, and Susan's motion to stay the proceedings, they apprised the district court of the Tribunal's ruling on the issue of arbitrability — including the Tribunal's finding that a preliminary injunction could be brought in either the district court or before the Tribunal. Wireless, Laslo, and Susan argued that it would be inefficient to have a preliminary injunction hearing in the district court while all the underlying claims were being arbitrated. Specifically, Wireless, Laslo, and Susan argued that the district court would need to predict how the Tribunal would decide the merits of the underlying claims because, to prevail on a motion for preliminary injunction, the moving party must demonstrate a likelihood of success on the merits. *Centro Tepeyac v. Montgomery C'nty*, 722 F.3d 184, 188 (4th Cir. 2013). And they moved the district court to stay the proceedings under its inherent power to control its docket, arguing that "[i]f the Court, in exercising its discretion, decides not to hear SmartSky's motions for preliminary injunction, then it should issue a stay of the present case, since the only remaining matter before it is the issue of a preliminary injunction." (Joint Appendix ("JA") 441).

6

On April 16, 2021, Wireless withdrew its counterclaims in the arbitration proceeding because it could not pay the arbitration costs. Because it found that the parties had agreed that the ongoing arbitration proceedings would be "the sole mechanism" for resolving their disputes, the Tribunal determined that Wireless' counterclaims were withdrawn "effectively with prejudice." JA 519. Between May 10 and 21, 2021, the parties participated in an arbitration hearing before the Tribunal. On the final day of the hearing, the Tribunal entered an order temporarily enjoining Appellants from engaging in the conduct set forth in the proposed interim injunction order filed by SmartSky in the arbitration action. At the conclusion of the hearing, the parties submitted post-hearing briefs, applications for fees, and responses to the same.

On October 1, 2021, the Tribunal issued an 81-page, single-spaced opinion and award in favor of SmartSky. The Tribunal's award included monetary relief in favor of SmartSky, permanent injunctive relief against Appellants, and sanctions against Appellants for violating arbitration orders. On October 5, 2021, SmartSky filed a motion to confirm the arbitration award under Section 9 of the FAA in the stayed district court action. Appellants filed two motions to vacate the arbitration award pursuant to Section 10 of the FAA.[5] On February 7, 2022, the district court confirmed the arbitration award in its entirety.

---

[5]Although the petition is titled "Motion to Vacate and Modify the Arbitrators' Final Award" and requests the court to "vacate or modify that part of the injunction to make clear that the WSS Defendants are not required to destroy the BBUs that it purchased for use for SSN,"(JA 802), the substance of the petition makes clear that Wireless and the Grosses (Continued)

This appeal followed.

## II.

Although Appellants raise several issues with the district court's decision, the threshold question this court must answer is whether the district court had subject matter jurisdiction to confirm the arbitration award. Because we find that the district court lacked subject matter jurisdiction, we do not reach the remaining issues raised by the parties.[6]

---

were not invoking the court's authority under Section 11 of the FAA, but rather under Section 10.

Section 11 provides that a district court may modify or correct an arbitration award where:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

Wireless and the Grosses argued in their petition that "the Final Award without modification, requires the WSS Defendants to destroy BBUs" and that the "arbitrators exceeded their power in so ordering." JA 801. Section 10 of the FAA authorizes the court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). The relief requested, and the cited basis for same, implicate the court's authority under Section 10.

[6] The other issues raised by Appellants include:

(Continued)

8

Jurisdiction is a question of law subject to *de novo* review. *United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994). One of the most fundamental principles in the federal court system is that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). A district court is empowered to adjudicate matters only when it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005). "When a party desires to proceed in a federal court, it 'must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014) (quoting *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008)). These principles apply to applications filed pursuant to Sections 9 and 10 of the FAA — which is to say there must be an independent basis for the district court to exercise subject matter jurisdiction. *See Carter v. Health Net of Cal., Inc.,* 374 F.3d 830, 833 (9th Cir. 2004) (holding that "[i]t is well-established that even when a petition is brought under the Federal Arbitration Act (FAA), a petitioner

---

1.      whether the permanent injunction issued by the district court complied with the standards of Rule 65(d) of the Federal Rules of Civil Procedure; and whether Appellants waived their right to challenge the permanent injunction;

2.      whether the district court erred in confirming the Tribunal's ruling that Wireless' withdrawal of its arbitration counterclaims was with prejudice;

3.      whether the Tribunal exceeded the scope of its authority by assessing Appellants SmartSky's expert witness expenses;

4.      whether the district court erred in confirming the Tribunal's award of SmartSky attorneys' fees against Appellants.

9

seeking to confirm or vacate an arbitration award in federal court must establish an independent basis for federal jurisdiction.")

### III.

### A.

In *Vaden v. Discover Bank*, the Supreme Court held that based on the plain language of Section 4 of the FAA, a court may look beyond a petition to compel arbitration to the underlying controversy to determine whether subject matter jurisdiction exists. 556 U.S. 49, 62–65 (2009). This is sometimes referred to as "look-through" jurisdiction. In *Badgerow v. Walters,* the Supreme Court addressed whether "look-through" jurisdiction applies to requests to confirm or vacate arbitration awards brought under Sections 9 and 10 of the FAA and held that it does not. 142 S. Ct. 1310 (2022). In so holding, the *Badgerow* Court examined and contrasted the plain language in Section 4 and Sections 9 and 10 of the FAA, and determined that Congress did not intend for look-through jurisdiction to apply to applications to confirm, vacate, or modify arbitration awards. Discussing its analysis of Section 4 in *Vaden*, the *Badgerow* Court explained:

> We proceeded methodically through Section 4's wording. "The phrase 'save for [the arbitration] agreement,'" we began, "indicates that the district court should assume the absence of the arbitration agreement and determine whether [the court] 'would have jurisdiction . . .' without it." But "[j]urisdiction over what?" "The text of Section 4," we continued, "refers us to 'the controversy between the parties.'" And that "controversy," we explained, could not mean the dispute before the court about "the existence or applicability of an arbitration agreement"; after all, the preceding save-for clause had just "direct[ed] courts" to assume that agreement away. The "controversy between the parties" instead had to mean their "underlying substantive controversy."

*Badgerow*, 142 S. Ct. at 1317 (quoting *Vaden*, 556 U.S. at 62, 63) (internal citations omitted).

*** 

> But Sections 9 and 10, in addressing applications to confirm or vacate an arbitral award, contain none of the statutory language on which *Vaden* relied. Most notably, those provisions do not have Section 4's "save for" clause. They do not instruct a court to imagine a world without an arbitration agreement, and to ask whether it would then have jurisdiction over the parties' dispute. Indeed, Sections 9 and 10 do not mention the court's subject-matter jurisdiction at all. So under ordinary principles of statutory construction, the look-through method for assessing jurisdiction should not apply.

142 S. Ct. at 1317.

## B.

SmartSky argues that the district court had subject matter jurisdiction to confirm the award because a complaint that asserts federal claims acts as a "jurisdictional anchor" for subsequent FAA Section 9 and 10 applications when the case was previously stayed pursuant to Section 3 of the FAA. SmartSky's argument suggests that we treat such applications like motions arising out of the underlying civil action, thereby allowing the district court's subject matter jurisdiction over the underlying action to extend to the petitions to enforce or vacate brought under the FAA. *Badgerow* does not permit such a result.

Applications made pursuant to Sections 9 and 10 of the FAA are not motions in a pending action; rather, they are separate actions independent of the related civil lawsuit. Indeed, *Badgerow* begins its analysis by distinguishing between federal civil actions and

11

FAA actions. The Court there explained that when federal law authorizes a civil action, that action has a proper place in federal court; however, the same is not necessarily true of "FAA-created arbitration actions." 142 S. Ct. 1310, 1316. Specifically, the Court explained that Sections 4 and 9-11 authorize certain actions that may be brought in federal court, but do not themselves support federal jurisdiction. *Id.* Therefore, an applicant seeking to confirm or vacate an arbitral award under Sections 9 or 10 "must identify a grant of jurisdiction apart from Section [9 or] 10 itself, conferring 'access to a federal forum.'" *Id.* (quoting *Vaden,* 556 U.S. at 59).

Accordingly, in *Badgerow*, the Court directed its subject matter jurisdiction analysis at the matter that was before the district court — a contract enforcement action, not the employment-related lawsuit that was before the arbitrator:

> Recall that the two are now contesting not the legality of Badgerow's firing but the enforceability of an arbitral award. That award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims. And quarrels about legal settlements—even settlements of federal claims— typically involve only state law, like disagreements about other contracts.

*Badgerow*, 142 S. Ct. at 1316-17 (citing *Vaden*, 556 U. S. at 63; *Kokkonen*, 511 U. S. at 378-82) (internal citations omitted).

The same reasoning applies here. At the time the parties filed their respective Section 9 and 10 applications, they were no longer litigating over their fraught business relationship — those issues and claims had been resolved by the Tribunal. Instead, the parties' dispute focused on the enforceability of the arbitral award. To find it had jurisdiction over what was in essence a contract dispute among the parties, the district court

12

had to "look through" to the civil lawsuit and determine that a federal claim existed. The same question that was before the *Badgerow* Court is now before this court — "Could the court do so?" *Badgerow v. Walters,* 142 S. Ct. 1310, 1317 (2022). Consistent with *Badgerow*, we answer "no," the district court could not.

So, if a district court cannot look to the underlying substantive claims as a basis for jurisdiction, where should it look? "An obvious place is the face of the application itself." *Badgerow,* 142 S. Ct. at 1316. Neither SmartSky's motion to confirm the arbitration award nor Appellants' motions to vacate the award allege that federal law outside of Sections 9 and 10 of the FAA entitle them to the relief sought in the motions.

Instead, the district court had to "look through" the Section 9 and 10 applications to the underlying controversy to satisfy the jurisdictional requirements of 28 U.S.C. § 1331.[7]

---

[7] Although the district court had before it a motion to dismiss the action after the parties had agreed to arbitrate their claims, it elected instead to stay the case pending arbitration. In so doing, the district court noted that some circuits have found that the FAA mandates that actions be stayed pending arbitration while other circuits have concluded that courts may dismiss actions subject to arbitration if all issues are arbitrable. The district court further noted that this circuit has not resolved what is the preferred disposition of a case involving arbitration where there are no remaining issues because they are all arbitrable. *See, e.g., Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) (explaining "[t]here may be some tension between our decision in *Hooters* [*of Am., Inc., v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999)]— indicating that a stay is required when the arbitration agreement 'covers the matter in dispute' — and *Choice Hotels* [*Int'l, Inc., v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)]— sanctioning dismissal 'when all of the issues presented . . . are arbitrable.' Our sister circuits are divided on whether a district court has discretion to dismiss rather than stay an action subject to arbitration. We need not resolve this disagreement because, even under *Choice Hotels*, dismissal is not appropriate where, as here, the issues are not all subject to arbitration.").

Here, we need not resolve any "disagreement" between *Hooters* and *Choice Hotels,* because this issue was not raised by the parties and the district court's decision to stay the (Continued)

As the Supreme Court in *Badgerow* explained, the "look-through" approach to jurisdiction is the rare exception, not the rule:

> The look-through rule is a highly unusual one: It locates jurisdiction not in the action actually before the court, but in another controversy neither there nor ever meant to be. We recognized that rule in *Vaden* because careful analysis of Section 4's text showed that Congress wanted it applied to petitions brought under that provision. But Congress has not so directed in Sections 9 and 10. Congress has not authorized a federal court to adjudicate a Section 9 or 10 application just because the contractual dispute it presents grew out of arbitrating different claims, turning on different law, that (save for the parties' agreement) could have been brought in federal court.

*Badgerow*, 142 S. Ct. at 1318 (citing *Vaden,* 556 U. S. at 62-65) (internal citations omitted).

The complaint (including the federal claims) that SmartSky contends served as the jurisdictional anchor for its subsequent FAA application was no longer pending before the district court because all the issues contained therein were consolidated in the arbitration. The district court acknowledged this fact in its memorandum opinion, writing:

> [T]he parties agree that all issues in this case are subject to arbitration and that this court, under the Teaming Agreement, may hear and decide motions for interim relief, or may defer that question to the arbitration panel.

---

case rather than dismiss it does not bear on our analysis regarding whether it had subject matter jurisdiction to confirm the award. We reject SmartSky's argument that the district court retained jurisdiction to hear the Section 9 and 10 applications because it previously stayed the case under Section 3. Whether the district court dismissed or stayed the action is of no moment, as it lacked subject matter jurisdiction to enforce or vacate the arbitration award under Sections 9 and 10 of the FAA.

14

(JA 497). Once the Tribunal ordered that all claims between SmartSky and Wireless be arbitrated pursuant to the Teaming Agreement, and the non-signatory Appellants voluntarily consented to arbitration, no claims remained pending before the district court.

*Badgerow's* "look-through" jurisdiction — jurisdiction based on claims that were no longer pending before the district court –applies only in the face of a Section 4 motion to compel; and is inadequate for Section 9 and 10 applications. Accordingly, we hold that the complaint filed in the district court could not, and did not, serve as a "jurisdictional anchor" for the parties' applications brought pursuant to Sections 9 and 10 of the FAA.

## C.

SmartSky argues that *Badgerow* is distinguishable from the facts of this case because, in *Badgerow*, no underlying federal court action served as a jurisdictional anchor. But this is a distinction without a difference. In *Badgerow,* the petitioner's employment contract "required her to bring claims arising out of her employment to arbitration, rather than to court[,]" so she began by initiating an arbitration action against her employer. 142 S. Ct. at 1314. After the arbitrator ruled against the petitioner, she sued her employer in Louisiana state court to vacate the arbitration award. *Id.* Only then did the action arrive in federal court, when the petitioner's employer removed the case. *Id.* SmartSky essentially argues that "freestanding" applications under Sections 9 and 10—like the petitioner's application in *Badgerow*—are governed by different rules than Section 9 and 10 applications filed in a case, like this one, that was stayed pending arbitration under Section 3. We find no support for such a distinction in the case law.

15

First off, *Badgerow* itself makes no distinction between "freestanding" Section 9 and 10 applications and those filed in cases where the action was previously stayed pursuant to Section 3.  Neither *Badgerow* nor the plain language of the FAA suggests that Congress would have wanted the rules governing "freestanding" Section 9 and 10 applications to differ from those applicable to applications filed in a case previously stayed. SmartSky's contention to the contrary does not persuade.

*Badgerow* does not leave open the question of whether there is a distinction between freestanding applications and those filed after arbitration in a previously stayed action; it plainly holds that all Section 9 and 10 applications must have an independent jurisdictional basis clear on the face of the application.  We decline to arrive at a different result merely because the district court here stayed the action pursuant to Section 3 rather than ordering arbitration under Section 4.  *Badgerow* is clear.  A district court's subject matter jurisdiction to adjudicate applications or petitions brought under one section of the FAA does not automatically extend to applications or petitions brought under a different section of the FAA.  Accordingly, the district court did not have or "retain" subject matter jurisdiction to adjudicate the Section 9 and 10 applications because it had subject matter jurisdiction to stay the action under Section 3.

D.

SmartSky also argues that *Badgerow* did not "undo the near century of well-established federal precedent" that a court that stays an action pending arbitration retains jurisdiction to enforce the award.  SmartSky relies upon two Supreme Court cases in support of its position — *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193

16

(2000), *and Marine Transit Corp. v. Dreyfus*, 284 U.S. 263 (1932).[8]  Neither case supports

SmartSky's argument.  Simply put, *Badgerow* neither creates nor leaves intact (to echo

SmartSky's assertion) a "continuing jurisdiction" rule to allow a district court that

previously stayed a case to retain or extend its subject matter jurisdiction over subsequent

Sections 9 and 10 applications.

With respect to SmartSky's reliance on *Cortez*, the issues before the *Cortez* Court

pertained to venue, not jurisdiction.  The *Cortez* Court granted *certiorari* to resolve a circuit

split over whether the FAA's venue provisions in Sections 9-11 were permissive or

mandatory.  SmartSky relies on the following language from *Cortez* to support its argument

that a court retains jurisdiction if it stays an action under Section 3 of the FAA: "We have,

however, previously held that the court with the power to stay the action under Section 3

---

[8] In a supplemental filing, SmartSky provided the court with two additional cases in support of its position: *Kinsella v. Baker Hughes Oilfield Operations, LLC,* 66 F.4th 1099 (7th Cir. 2023), and *Jules v. Andre Balazs Props.,* 2023 WL 5935626, 2023 U.S. Dist. LEXIS 161406 (S.D.N.Y Sept. 12, 2023).  We decline to follow the holding of the Seventh Circuit in *Kinsella.*  Although the Seventh Circuit considered *Badgerow's* holding, the court looked beyond the face of application to vacate the arbitration award to the underlying civil suit to assess the district court's subject matter jurisdiction.

Considering the clear mandates of *Badgerow* we cannot follow in the footsteps of our sister Circuit.

With respect to *Jules*, the district court summarily concluded that it had jurisdiction to confirm the arbitration award because "[d]istrict courts with jurisdiction to stay an action pursuant to 9 U.S.C. § 3 retain jurisdiction to confirm resulting arbitral awards."  2023 WL 5935626 at *7.  The *Jules* court cited to *Cortez,* 529 U.S. at 202, to support its holding that it had subject matter jurisdiction and expressly found that *Badgerow* did not apply.  We decline to adopt the reasoning of the *Jules* court because, as discussed, we are of the view that its reliance on *Cortez* is misplaced; *Badgerow* is applicable even when a case was previously stayed pursuant to Section 3.

has the further power to confirm any ensuing arbitration award." 529 U.S. at 202 (citing *Marine Transit Corp v. Dreyfus*, 284 U.S. 263, 275-76 (1932)). The sentences immediately preceding this quotation, however, demonstrate that the *Cortez* Court was discussing how a restrictive interpretation of the venue clauses in Sections 9-11 would cause tension with Section 3:

> A restrictive interpretation would also place § 3 and §§ 9-11 of the FAA in needless tension, which could be resolved only by disrupting existing precedent of this Court. Section 3 provides that any court in which an action "referable to arbitration under an agreement in writing" is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. If an arbitration were then held outside the district of that litigation, under a restrictive reading of §§ 9-11 a subsequent proceeding to confirm, modify, or set aside the arbitration award could not be brought in the district of the original litigation (unless that also happened to be the chosen venue in a forum selection agreement).

*Id.* at 201-02.

The *Cortez* court does not hold or find that a court that has subject matter jurisdiction to enter a stay retains jurisdiction to later enforce an arbitration award. We therefore do not interpret the *Cortez* Court's discussion of the impact of a restrictive interpretation of the venue provisions in Sections 9-11 to set forth a blanket rule that a court that stays a case pursuant to Section 3 retains subject matter jurisdiction to enforce or vacate an award under Sections 9 and 10.

SmartSky also cites to *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263 (1932), to support a "continuing jurisdiction" theory when a court has stayed an action under Section 3. We do not find any support for such a broad result under the holding of *Marine Transit.*

18

The unique facts in *Marine Transit* are key to appreciating how and why the district court in that case was able to "retain" jurisdiction to enforce the arbitration award. The *Marine Transit* plaintiffs filed a libel action in admiralty, *in personam* and *in rem,* to recover damages for the loss of wheat that occurred when a tug boat carrying cargo struck a guide wall and sunk. Some of the parties were ordered to submit to arbitration regarding issues raised by the governing contract. The subsequent arbitration award was confirmed by the district court and affirmed by the court of appeals. The issue before the *Marine Transit* Court was whether the district court was authorized to enforce the arbitration award by the "United States Arbitration Act." 284 U.S. at 270. In answering the question presented, the *Marine Transit* Court explained:

> Section 4 authorizes a court, which would otherwise have jurisdiction in admiralty 'of the subject matter of a suit arising out of the controversy between the parties' to a written agreement for arbitration, to 'make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.' Section 8 explicitly provides that where a cause of action is 'otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings,' and the court may then 'direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.'
>
> In this instance, the libel against the vessel came directly within the provision of § 8.

*Id.* at 273–74.

19

Although the facts in *Marine Transit* focused on compelling arbitration pursuant to Section 4 and retaining jurisdiction to affirm the award pursuant to Section 8, the Court briefly discussed Section 3:

> And it is contended that, aside from § 8, the Act does not provide for the granting of an order for arbitration 'in a pending suit.' With respect to the last contention, it may be observed that § 3 provides for a stay in a pending suit until arbitration has been had in accordance with the terms of the agreement, and it would be an anomaly if the court could grant such a stay and could not direct the arbitration to proceed although the court, admittedly, could have made an order for the arbitration if no suit had been brought.

*Id.* at 274–75. The Court's *dicta* cannot be read as binding precedent that a court that stays an action pursuant to Section 3 of the FAA retains jurisdiction to confirm or vacate arbitral awards pursuant to Sections 9 and 10. This is particularly so in view of the recent and plain language of *Badgerow*. Further, *Marine Transit's* discussion relates to the interplay between Section 3, which allows a court to stay an action, and Section 4, which authorizes a court to "direct the arbitration to proceed." 284 U.S. at 275.

Our position that *Marine Transit* does not create a blanket rule that a district court "retains" jurisdiction is further supported by examination of the language in that case relied upon by many other courts and SmartSky:

> We do not conceive it to be open to question that, where the court has authority under the statute, as we find that it had in this case, to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, *ultra vires* or other defect.

*Id.* 275-76. As mentioned above, the glaring distinction between *Marine Transit* and the present case is that the underlying action in *Marine Transit* was for libel in admiralty, which

20

is uniquely and expressly governed by Section 8 of the FAA.  The language of Section 8 is the independent basis which confers subject matter jurisdiction upon a district court to enforce an arbitration award that flows from a libel suit filed in admiralty.  *See Marine Transit*, 284 U.S. at 263 (holding "[t]he award was accordingly binding upon the Marine Transit Corporation both as respondent and as the owner and claimant of the tug, and the District Court entered its decree upon the award against the corporation under the authority expressly conferred by § 8.")  Section 8 is the only section that expressly provides that a district court may "retain" jurisdiction to enforce, vacate, or modify an award.  Sections 9 and 10 do not contain such language and our reading of *Cortez* and *Marine Transit* do not provide any escape from *Badgerow's* holding that there must be an independent basis for subject matter jurisdiction for applications to enforce or vacate an arbitration award.

IV.

For the reasons set forth herein, we hold that the district court lacked subject matter jurisdiction to confirm the arbitration award.  Accordingly, the district court's judgment is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

21