(Slip Opinion)     OCTOBER TERM, 2025     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## JULES *v.* ANDRE BALAZS PROPERTIES ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 25–83.   Argued March 30, 2026—Decided  May 14, 2026

This case presents the question whether a federal court that has previously stayed claims in a pending action under §3 of the Federal Arbitration Act (FAA) has jurisdiction to confirm or vacate a resulting arbitral award on those claims, even when the motion to confirm under §9 or the motion to vacate under §10 does not independently present a basis for federal jurisdiction on its face.

Between 2017 and 2020, petitioner Adrian Jules worked at the Chateau Marmont Hotel in Los Angeles, California.  When the hotel ended his employment in March 2020, Jules sued in Federal District Court in New York, alleging that respondents unlawfully discriminated against him in violation of federal and state law.  Citing an arbitration agreement Jules had signed before beginning work at the hotel, respondents moved to stay federal proceedings pending arbitration under §3 of the FAA.  The District Court held that the arbitration agreement covered Jules's claims and stayed proceedings.  Jules then commenced arbitration against respondents.  The arbitrator issued a final award, ruling against Jules on all claims and awarding approximately $34,500 in sanctions to respondents.  Back in the same District Court that had previously stayed Jules's claims pending arbitration, respondents moved to confirm the award under §9.  Jules opposed confirmation while cross-moving to vacate the arbitral award under §10 on various grounds.  Jules argued that, under *Badgerow* v. *Walters*, 596 U. S. 1, the District Court lacked jurisdiction to confirm the award because the §9 and §10 motions neither presented federal questions nor satisfied the requirements for diversity jurisdiction.  The District Court disagreed and confirmed the arbitral award.  The Second Circuit affirmed, reasoning that *Badgerow* involved a freestanding action commenced for the sole purpose of vacating an arbitral award, but that the

present action was distinct because it started as a federal-question suit before it was stayed pending arbitration.  The Second Circuit held that a court with the power to stay an action under §3 has the further power to confirm any ensuing arbitration award, regardless of whether there is an independent jurisdictional basis for the §9 and §10 proceedings.

*Held*: A federal court that has previously stayed claims in a pending action under §3 of the FAA has jurisdiction to confirm or vacate a resulting arbitral award on those claims as prescribed in §9 and §10 of the FAA; nothing in the FAA precludes the normal operation of federal jurisdiction regarding live claims pending before a federal court.  Pp. 7–16.

(a) Unlike with the freestanding applications at issue in *Vaden* v. *Discover Bank*, 556 U. S. 49, and *Badgerow*, assessing jurisdiction over a §9 or §10 motion in a case originally filed in federal court does not require "'looking through'" the filed action "to the parties' underlying substantive controversy" outside of court.  *Vaden*, 556 U. S., at 62.  Instead, the court may assess its jurisdiction by looking at the suit that is already before it.  As *Badgerow* explained, "[j]urisdiction to decide [a] case includes jurisdiction to decide [a] motion" within that case, and usually "there is no need to 'look through' the motion in search of a jurisdictional basis outside the court."  596 U. S., at 15.

The District Court had original jurisdiction, under 28 U. S. C. §1331, over Jules's federal claims, and it was that very jurisdiction which authorized the court to adjudicate the arbitrability of Jules's claims under the parties' contract before staying litigation pending arbitration pursuant to §3.  Nothing in the FAA eliminated that jurisdiction while the parties arbitrated.  When the parties returned to court after arbitration with §9 and §10 motions, the court had the same "jurisdiction to decide the case," and thus "jurisdiction to decide th[ose] motion[s]," that it possessed from the start.  *Badgerow*, 596 U. S., at 15.

This case therefore is not, as petitioner asserts, "*Badgerow* all over again."  In *Badgerow*, the first and only thing that had occurred in federal court was the confirm-or-vacate dispute under §9 and §10.  In that circumstance, there were only two places a court could look to find federal jurisdiction: the face of the FAA motions or the underlying dispute that "was not before" the court.  *Id.*, at 9.  Here, however, there is an obvious third place to look for jurisdiction: the original claims themselves, which were sufficient to establish the District Court's jurisdiction under 28 U. S. C. §1331.

The fact that the arbitral award may have resolved Jules's original claims only underscores why the District Court's original jurisdiction extended to the parties' §9 and §10 motions.  Those motions required the District Court to assess whether there were grounds to vacate the award.  The motions were thus integral to determining whether the

award would continue to serve as a valid defense to the original claims that had been stayed, but were still pending, in District Court until the court confirmed the award.

Jules notes that, unlike dismissal based on an affirmative defense, a §9 motion goes further and asks a court to convert an arbitral award into a judgment of the court. That is correct, but federal courts have the power to incorporate private settlements into orders of the court when resolving claims that are the subject of those settlements, as recognized in *Kokkonen* v. *Guardian Life Ins. Co. of America*, 511 U. S. 375, as well as in the context of consent judgments and class-action settlements.

The FAA's structure further confirms jurisdiction here. In *Smith* v. *Spizzirri*, 601 U. S. 472, the Court held that §3 requires a stay rather than dismissal, which "comports with the supervisory role that the FAA envisions for the courts," including "assist[ing] parties in arbitration . . . and facilitating recovery on an arbitral award." *Id.*, at 478. Under the rule the Court adopts today, this scheme continues to work well: The FAA requires a stay so that a court that has granted a §3 stay can superintend the arbitration to the end, including through confirmation or vacatur under §9 or §10. Pp. 7–11.

(b) Jules's remaining counterarguments are without merit. First, Jules overreads *Badgerow*, which did not convert the nonjurisdictional FAA into a comprehensive jurisdictional scheme that requires an independent jurisdictional basis for all §9 and §10 motions. The problem for the losing party in *Badgerow* was that, without the look-through approach authorized by §4, there was no federal jurisdiction to be found in the case. See 596 U. S., at 9, 12. Because §9 and §10, unlike §4, did not provide a textual basis for applying the look-through approach, the Court held that it was not available. *Id.*, at 14. Respondents here, to the contrary, are not asking for any "highly unusual" look-through rule, *id.*, at 12, but merely ask the District Court to use the tools provided by the FAA to finally resolve the federal claims Jules filed in federal court under 28 U. S. C. §1331.

Second, Jules argues that §9 and §10 applications should be treated as entirely "new federal actions" for purposes of assessing jurisdiction, even when filed in pre-existing suits, because §9 and §12 of the FAA require service and notice of such applications. That argument fails. The Court has explained that §3's mandatory stay is aimed at "avoid[ing] [the] costs and complications" of "bring[ing] a new suit." *Spizzirri*, 601 U. S., at 478. Jules concedes, moreover, that service of §9 and §10 motions is not required in all cases. The service provisions in §9 and §12 do not impose the strict jurisdictional rule he favors.

Third, Jules's reliance on §8 of the FAA, which governs certain maritime arbitrations, is unavailing. Section 8 merely instructs that in

one class of admiralty cases involving *in rem* jurisdiction over a vessel, the court holding the vessel must retain jurisdiction to confirm or vacate such award. It does not shed light on how jurisdiction should function in other FAA disputes.

Finally, Jules's policy concerns lack force. His concerns about encouraging parties to engage in useless federal litigation to create a jurisdictional anchor are conjectural, and there is no evidence suggesting that his concerns about manufactured federal jurisdiction will come to pass. Moreover, it is not anomalous for federal jurisdiction to turn on how litigation proceeded, as "actual litigation" generally "define[s] the parties' controversy." *Vaden*, 556 U. S., at 68. In any event, countervailing policy concerns favor the Court's rule. Jules's rule would significantly diminish "the supervisory role that the FAA envisions for the courts," *Spizzirri*, 601 U. S., at 478, and would undermine the efficiency interests at the heart of the FAA by forcing parties to launch a fresh state-court proceeding to secure confirmation or vacatur of an arbitral award. Jules's approach could also lead to unnecessarily complex dual-track litigation where confirm-or-vacate proceedings commence in state court just as arbitrability appeals begin in federal court. Pp. 11–16.

Affirmed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

———

No. 25–83

———

## ADRIAN JULES, PETITIONER *v.* ANDRE BALAZS PROPERTIES, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[May 14, 2026]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

This case addresses whether a federal court that has previously stayed claims in a pending action under §3 of the Federal Arbitration Act (FAA), 9 U. S. C. §1 *et seq.*, has jurisdiction to confirm or vacate a resulting arbitral award as to those claims under §9 and §10. The Court holds that it does. Because a federal court in this scenario has jurisdiction over the original claims and does not lose that jurisdiction while the case is stayed pending arbitration, it retains jurisdiction to determine whether the arbitral award resolving those claims is valid and should be confirmed. The judgment of the Court of Appeals for the Second Circuit is therefore affirmed.

I

A

The FAA "authorizes a party to an arbitration agreement to seek several kinds of assistance from a federal court." *Badgerow* v. *Walters*, 596 U. S. 1, 4 (2022). At the front end, §3 of the FAA directs federal courts to stay any lawsuit that involves an issue that is "referable to arbitration," and §4 allows federal courts to compel arbitration if a party to an

arbitration agreement refuses to arbitrate. During arbitration, federal courts may facilitate the proceedings, including by appointing an arbitrator under §5 and enforcing subpoenas under §7. On the back end, and central here, after an arbitral award has issued, federal courts may confirm, vacate, or modify such an award under §9, §10, or §11. Under §9, a court must confirm an award upon request "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." The grounds for vacatur and modification are limited. See §10(a) (allowing vacatur for "corruption, fraud, or undue means," "partiality" or "misconduct" by an arbitrator, and "where the arbitrators exceeded their powers"); §11 (allowing modification of "material miscalculation[s]" and in other narrow circumstances).

An FAA motion can arrive in federal court in one of two ways. Sometimes (like in this case), an FAA motion arises in a pre-existing lawsuit. In such cases, one party files a federal suit and the other responds by arguing that the dispute is arbitrable and so should not go forward in court. If the latter party is right, the court must stay proceedings pending arbitration under §3 and, upon request, must compel arbitration under §4.[1] (What else a court may do in this scenario, including with respect to §9 and §10 motions filed after arbitration has concluded and the parties return to court, is the subject of this appeal.) In other cases, a "freestanding" FAA motion can arrive in federal court outside of any pre-existing federal case. For example, the parties may proceed directly to arbitration under their contract but need assistance enforcing a subpoena, and so apply to a court for aid under §7. Or one party may refuse to respond to an out-of-court arbitration demand at all, and the other side may seek an order compelling arbitration under §4.

───────────

[1] As discussed below, see *infra*, at 10, this Court has held that §3 does not authorize a district court to dismiss a case after finding it to be arbitrable; the text of §3 says that a federal court "shall . . . stay" proceedings, so a stay is required. *Smith* v. *Spizzirri*, 601 U. S. 472, 476 (2024).

Regardless of how an FAA dispute begins, federal jurisdiction is not always a foregone conclusion. For a federal court to have jurisdiction over an arbitral dispute, it is not enough that the dispute implicates the FAA. That is because the FAA is "'something of an anomaly' in the realm of federal legislation." *Vaden* v. *Discover Bank*, 556 U. S. 49, 59 (2009). Although the FAA is a federal statute that provides federal standards, it "does not itself create [federal] jurisdiction." *Badgerow*, 596 U. S., at 4. Instead, given the FAA's "nonjurisdictional cast," a federal court must have an "'independent jurisdictional basis'" for granting FAA relief. *Vaden*, 556 U. S., at 59. That could come, for example, in the form of diversity jurisdiction if a dispute under the FAA arises between citizens of different States with over $75,000 at issue. See 28 U. S. C. §1332(a). Or a court may have federal-question jurisdiction if an FAA motion implicates a federal issue (other than one under the FAA). See §1331.

In two prior cases, this Court has addressed how to assess jurisdiction over FAA motions filed as "freestanding" actions in federal court. First, in *Vaden* v. *Discover Bank*, the Court held that §4 permits courts to assess jurisdiction by "'looking through'" a motion to compel arbitration to the underlying dispute. 556 U. S., at 62. There, the parties began with a contract dispute in state court, but after one side filed counterclaims, the other side filed a §4 motion in federal court invoking the contract's arbitration agreement. *Id.*, at 54–55. The §4 motion itself did not present a federal question; it invoked only a contractual right to arbitrate. *Id.*, at 63. Nor was diversity jurisdiction available. *Id.*, at 54, n. 1. Yet this was not the end of the matter. As the Court observed, §4's text authorizes relief if a court, "'save for [the arbitration] agreement, would have jurisdiction'" over the dispute. *Id.*, at 62. The Court thus held that courts should determine §4 jurisdiction "by 'looking through' a §4 petition to the parties' underlying substantive controversy,"

even though that controversy is not before the federal court. *Id.*, at 62–63. If that "'controversy between the parties,' as they have framed it, could be litigated in federal court," even if no such claim was ever filed in federal court, a court has jurisdiction to compel arbitration. *Id.*, at 66.

Second, in *Badgerow* v. *Walters*, the Court concluded that *Vaden*'s look-through approach does not apply to freestanding motions to confirm or vacate arbitral awards under §9 or §10. 596 U. S., at 5. The parties in *Badgerow* began by proceeding directly to an arbitration of federal claims without filing suit in any court and without filing any §3 or §4 motion. *Ibid.* After the arbitration resolved the federal claims at issue, one party sought confirmation of the award in federal court, while the other sought vacatur. *Ibid.* Like in *Vaden*, the FAA motions presented no (non-FAA) federal question on their face, and the parties were not diverse. 596 U. S., at 9. The Court thus considered whether *Vaden*'s "'look-through' approach to jurisdiction applies to requests to confirm or vacate arbitral awards under the FAA's Sections 9 and 10." 596 U. S., at 5.

The Court held that it does not. The look-through approach, the Court emphasized, is a "highly unusual" "jurisdictional outlier." *Id.*, at 12, 14. That is because the look-through approach "locates jurisdiction not in the action actually before the court, but in another controversy neither there nor ever meant to be." *Id.*, at 12; see *id.*, at 9 (similar). *Vaden* grounded its anomalous approach largely in §4's "'save for'" language, whereas "Sections 9 and 10," the Court observed, "contain none of the statutory language on which *Vaden* relied." 596 U. S., at 10–11. Accordingly, *Badgerow* held that a court presented with a freestanding §9 or §10 motion may not look through that motion to a controversy involving a federal issue that is "not before the court" in order to establish jurisdiction. *Id.*, at 5.

## B

Between 2017 and 2020, petitioner Adrian Jules worked at the Chateau Marmont Hotel in Los Angeles, California. In March 2020, the hotel ended his employment, citing staffing issues related to the COVID–19 pandemic. Jules then sued in Federal District Court in New York (where several respondents are domiciled), alleging, among other things, that respondents unlawfully discriminated against him in violation of federal and state law.

Jules, however, had signed an arbitration agreement before beginning work at the hotel, which stated that any disputes related to his employment or termination thereof that could not be resolved by negotiation or mediation must be resolved by arbitration. Citing this agreement, respondents moved, as relevant here, to stay federal proceedings pending arbitration under §3. In 2021, the District Court held that the arbitration agreement covered Jules's claims and stayed proceedings.

Jules then commenced arbitration against respondents. In 2023, the arbitrator issued a final award ruling against Jules on all claims. In addition, the arbitrator awarded about $34,500 in sanctions to respondents based on Jules's and his attorney's misconduct (which included Jules refusing to participate in the arbitral hearing on Jules's claims).

Back in District Court, before the same court that had previously stayed Jules's claims pending arbitration, respondents moved to confirm the award under §9. Jules opposed confirmation while cross-moving to vacate the arbitral award under §10 on various grounds. Relevant here, Jules argued that, under *Badgerow*, the District Court lacked jurisdiction to confirm the award because the §9 and §10 motions did not present federal questions or satisfy the requirements for diversity jurisdiction, given that the parties to the arbitration and award were nondiverse and the amount in controversy was less than $75,000.

The District Court disagreed and confirmed the arbitral award. The Second Circuit affirmed. *Badgerow*, the Second Circuit emphasized, "involved [a freestanding] action commenced . . . for the sole purpose of vacating an arbitral award." App. to Pet. for Cert. 6a (Pet. App.). That made it fundamentally "unlike the present action, which started as a federal question suit before it was stayed pending arbitration." *Ibid.* In the latter situation, the Court of Appeals reasoned, "the Supreme Court has held that a 'court with the power to stay the action under §3 has the further power to confirm any ensuing arbitration award,'" regardless of whether there is an independent jurisdictional basis for the §9 and §10 proceedings. *Ibid.* (quoting *Cortez Byrd Chips, Inc.* v. *Bill Harbert Constr. Co.*, 529 U. S. 193, 202 (2000); alteration omitted). Because nothing in *Badgerow* undermined this principle, the Second Circuit held that the District Court had jurisdiction to confirm the award. See Pet. App. 7a.

Jules filed a timely petition for a writ of certiorari seeking review of the Second Circuit's conclusion that *Badgerow*'s holding is limited to freestanding §9 and §10 applications without a pre-existing federal lawsuit. Two other Courts of Appeals have agreed with the Second Circuit after *Badgerow*, but the Fourth Circuit has held that *Badgerow*'s holding applies to all §9 and §10 motions, regardless of whether claims were filed in federal court before they were resolved in arbitration. Compare *George* v. *Rushmore Serv. Center, LLC*, 114 F. 4th 226, 238, n. 16 (CA3 2024), and *Kinsella* v. *Baker Hughes Oilfields Operations, LLC*, 66 F. 4th 1099, 1103 (CA7 2023), with *SmartSky Networks, LLC* v. *DAG Wireless, LTD.*, 93 F. 4th 175, 183 (CA4 2024). This Court granted certiorari to resolve the division among the Courts of Appeals. 607 U. S. 1079 (2025).

## II

This case asks whether a federal court with pre-existing jurisdiction over claims that it stayed pending arbitration under §3 can adjudicate a §9 or §10 motion even if that motion does not present, on its face, an independent basis for federal jurisdiction. The answer is yes. "[A] court with the power to stay the action under §3 has the further power to confirm [or vacate] any ensuing arbitration award." *Cortez Byrd*, 529 U. S., at 202 (addressing a different, venue-related question under the FAA).

To start, unlike with the freestanding applications at issue in *Vaden* and *Badgerow*, see *supra*, at 3–4, assessing jurisdiction over a §9 or §10 motion in a case originally filed in federal court does not require "looking through" the filed action. Instead, the court may assess its jurisdiction by looking at the suit that is already before it. As *Badgerow* explained, "[j]urisdiction to decide [a] case includes jurisdiction to decide [a] motion" within that case, and usually "there is no need to 'look through' the motion in search of a jurisdictional basis outside the court." 596 U. S., at 15.

Here, the District Court had original jurisdiction, under 28 U. S. C. §1331, over Jules's federal claims. It was this very jurisdiction that authorized the court to adjudicate the arbitrability of Jules's claims under the parties' contract to begin with, before staying litigation pending arbitration. Nothing in the FAA eliminated that jurisdiction while the parties arbitrated. See *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. 576, 581 (2008) ("As for jurisdiction over controversies touching arbitration, the [FAA] does nothing"). So when the parties returned to court after arbitration with §9 and §10 motions, the court had the same "jurisdiction to decide the case," and thus "jurisdiction to decide th[ose] motion[s]," that it possessed from the start. *Badgerow*, 596 U. S., at 15. "The court had federal question subject matter jurisdiction and . . . never lost it." 1 I.

Macneil, R. Speidel, & T. Stipanowich, Federal Arbitration Law §9.2.3.1, p. 9:13 (1995).

The District Court's pre-existing jurisdiction means that this case is not "*Badgerow* all over again." Contra, Brief for Petitioner 3. In *Badgerow*, the first (and only) thing that had occurred in federal court was the confirm-or-vacate dispute under §9 and §10. See 596 U. S., at 5–6. In that circumstance, there were only two places a court could look to find federal jurisdiction: the face of the FAA motions, on the one hand, or the underlying dispute that "was not before" the court, on the other. *Id.*, at 9. Here, however, there is an obvious third place to look for jurisdiction: the original claims themselves. Because those claims were sufficient to establish the District Court's jurisdiction in this case under 28 U. S. C. §1331, they also established the District Court's authority to resolve the motions to confirm or vacate the arbitral award resolving those claims.

It is true that, by the time the parties filed the §9 and §10 motions here, the arbitrator had issued an award that marked "a contractual resolution of the parties' dispute." 596 U. S., at 9. As Jules argues, that out-of-court resolution functioned like a release, which could serve as an affirmative defense and be used to "resolve the original claim" filed in court. Reply Brief 15 (citing Federal Rule of Civil Procedure 8(c)(1), which lists "arbitration and award" as an "affirmative defense"). The fact that the arbitral award may "resolve" Jules's original claims, however, only underscores why the District Court's original jurisdiction extends to the parties' §9 and §10 motions. Those motions required the District Court to assess whether there were grounds to vacate the award. See §9 (requiring confirmation "unless the award is vacated . . . as prescribed in sectio[n] 10"). They were thus integral to determining whether the award would continue to serve as a valid defense to the original claims that had been stayed, but were still pending, in District Court until the court confirmed the award. Cf. Judgment

in No. 1:20–cv–10500 (SDNY), ECF Doc. 118, p. 1 (confirming arbitral award against Jules and entering judgment on Jules's claims).

Jules notes that, unlike dismissal based on an affirmative defense, a §9 motion goes further and asks a court to convert an arbitral award into a judgment of the court. See §13 (stating that an order confirming an arbitral award has the "same force and effect" as a judgment in a federal action). That is correct, but this Court has held that federal courts have the power to incorporate private settlements into orders of the court when resolving claims that are the subject of those settlements. In *Kokkonen* v. *Guardian Life Ins. Co. of America*, 511 U. S. 375 (1994), for example, the Court made clear that a federal "court is authorized to embody [a] settlement contract in its dismissal order" and later "enforc[e]" that "settlement agreement." *Id.*, at 381–382.[2] Similarly, the Court has recognized federal courts' jurisdiction to embody contracts "arrived at by negotiation between the parties" as consent judgments in certain circumstances. *United States* v. *ITT Continental Baking Co.*, 420 U. S. 223, 237, n. 10 (1975) (noting the "dual character" of such judgments). Federal courts also routinely resolve disputes over private settlements in class actions, which can be settled "only with the court's approval." Fed. Rule Civ. Proc. 23(e); see, *e.g.*, *Sullivan* v. *DB Invs., Inc.*, 667 F. 3d 273, 293 (CA3 2011) (en banc) (addressing disputes over class settlement that included an "agreed-upon injunction"). In each scenario, as here, the parties reach a contractual resolution of

_____

[2] A court's original jurisdiction to embody a private settlement in a court order is distinct from any ancillary-enforcement jurisdiction to adjudicate disputes that later arise out of such an agreement. The former falls within a court's original jurisdiction to resolve still-pending claims under conditions deemed proper by the court. The Court today does not address respondents' argument that the §9 and §10 motions in this case fell within the District Court's ancillary-enforcement jurisdiction. See Brief for Respondents 26 (citing *Kokkonen*, 511 U. S., at 380–381).

claims filed in federal court, and the federal court has jurisdiction to resolve disputes over that private settlement and embody the settlement in a court order resolving the case.

The FAA's structure further confirms jurisdiction here. This Court recently considered "whether §3 permits a court to dismiss [a] case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration." *Smith* v. *Spizzirri*, 601 U. S. 472, 474 (2024). Given that §3 dictates that courts in this situation "'shall . . . stay'" proceedings, the Court easily concluded that "a stay," not dismissal, "is required." *Id.*, at 476–477. This conclusion, the Court emphasized, "comport[ed] with the supervisory role that the FAA envisions for the courts," which includes "assist[ing] parties in arbitration by . . . appointing an arbitrator, see 9 U. S. C. §5; enforcing subpoenas . . . , see §7; and facilitating recovery on an arbitral award, see §9." *Id.*, at 478. "Keeping [a] suit on the court's docket makes good sense in light of this potential ongoing role, and it avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections." *Ibid.*

Under the rule the Court adopts today, this scheme continues to work well: The FAA requires a stay, rather than dismissal, so that a court that has granted a §3 stay can superintend the arbitration to the end, including through confirmation or vacatur. On Jules's theory, however, things would fall apart. Without an independent jurisdictional basis (like complete diversity and more than $75,000 at stake) on the face of a §5, §7, §9, or §10 motion, Jules concedes that a court that grants a mandatory §3 stay has little to do but wait until the arbitration concludes and, finally, dismiss the claims. It would be curious for §3 to mandate keeping cases on federal dockets for essentially no reason at all in the cases where federal interests are likely at their highest: those, like this one, involving live federal questions. More plausibly, a court that grants a §3 stay retains jurisdiction

to see the case through and provide the FAA's "procedural protections" along the way. *Ibid.*

## III

Jules's remaining counterarguments are without merit. First, and primarily, he points to *Badgerow*. In his view, *Badgerow* makes clear that the FAA is a "reticulated" framework whose "text," alone, governs federal jurisdiction over FAA disputes and requires an independent jurisdictional basis for all §9 and §10 motions. Reply Brief 1–2. As explained, however, this overreads *Badgerow*, which nowhere converted the "nonjurisdictional" FAA, *Vaden*, 556 U. S., at 59, into a "reticulated" jurisdictional scheme. The problem for the losing party in *Badgerow* was that, without the look-through approach authorized by §4, there was no federal jurisdiction to be found in the case. See 596 U. S., at 9, 12. Because §9 and §10 did not provide a textual basis for applying the look-through approach, the Court held that it was not available. *Id.*, at 14. Respondents here, to the contrary, are not asking for any "highly unusual" look-through rule. *Id.*, at 12. Instead, the court in this case secured federal jurisdiction, in one of the most usual ways imaginable, based on the federal claims Jules filed in federal court under 28 U. S. C. §1331. Respondents merely asked the District Court to use the tools provided by the FAA to finally resolve those claims. Nothing in *Badgerow* or the FAA eliminates the District Court's jurisdiction to do so.[3]

Second, Jules disputes whether §9 and §10 applications should really be considered motions in a pending case.

_____

[3] Jules focuses on *Badgerow*'s observation that confirm-or-vacate disputes like this one typically "involve only state law, like disagreements about other contracts." 596 U. S., at 9. It is true that federal courts ordinarily lack freestanding authority to adjudicate state-law claims. See, *e.g.*, *Kokkonen*, 511 U. S., at 378–381. That has never prohibited federal courts, however, from resolving disputes over, and giving force to, private settlements when they resolve claims that are pending in federal court. See *id.*, at 381–382; *supra*, at 9–10.

Instead, he argues, they should be treated as entirely "new federal actions" for purposes of assessing jurisdiction, even when filed in pre-existing suits, because §9 and §12 of the FAA require service and notice of such applications. Brief for Petitioner 22–23. This Court has explained, however, that §3's mandatory stay is aimed precisely at "avoid[ing] [the] costs and complications" of "bring[ing] a new suit," *Spizzirri*, 601 U. S., at 478, and even Jules admits that neither service of process nor a whole new proceeding is always necessary, see Reply Brief 6, n. 1. The service provisions in §9 and §12 (the latter of which, governing service of §10 motions, does not even mention "jurisdiction") do not impose the strict jurisdictional rule Jules favors.

Third, Jules turns to §8 of the FAA, which governs certain maritime arbitrations. Section 8 provides that, when "the basis of jurisdiction" is "in admiralty," a party may "begin his proceeding . . . by libel and seizure of the vessel." Jules notes that in such cases, §8 also provides that "the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award." To Jules, this shows that Congress knew how to authorize the kind of "jurisdictional anchor" respondents seek here, yet declined to provide such a basis for jurisdiction in §9 or §10.

The Court disagrees. Section 8 merely instructs that, in one class of admiralty cases where a plaintiff invokes *in rem* jurisdiction over a vessel "as security for compliance with any arbitral award," *The Anaconda* v. *American Sugar Refining Co.*, 322 U. S. 42, 44 (1944), the court holding the vessel must retain jurisdiction to confirm or vacate such award. District courts would likely have jurisdiction over such proceedings even without §8 under 28 U. S. C. §1333, which provides "original jurisdiction" over admiralty cases. It appears, then, that §8 does little more than provide specific procedural rules governing how courts ought to handle a distinct form of admiralty arbitration involving seized

vessels. It does not shed light on how jurisdiction, more broadly, should function in other FAA disputes.

Finally, Jules resorts to policy. Allowing courts to exercise jurisdiction in cases like this one, he worries, will encourage parties to "engage in useless federal litigation for the sole purpose of creating a jurisdictional anchor" later on, Brief for Petitioner 34, disrupting the "'sensible . . . division of labor'" between state and federal courts that *Badgerow* recognized, Brief for Petitioner 31 (quoting 596 U. S., at 18). Even without such gamesmanship, he continues, respondents' rule will make federal jurisdiction turn on the "happenstance" of whether one party to an arbitral dispute filed a federal case before proceeding to arbitration. Brief for Petitioner 14.

Setting aside that "'[i]t is not for this Court to employ untethered notions of what might be good public policy to [determine] our jurisdiction,'" *Badgerow*, 596 U. S., at 16, Jules's policy arguments lack force on their own terms. For one thing, his concerns about protective anchor suits are conjectural. Even in courts that have long embraced *Badgerow*'s rule for freestanding §9 and §10 motions but agree with the result the Court reaches today for pre-existing cases, Jules identifies no epidemic of useless filings clogging up federal courts.[4] That may be because filing a precautionary federal anchor suit runs a serious risk of forfeiting the right to arbitrate. Cf. *Morgan* v. *Sundance, Inc.*, 596 U. S. 411, 413, 418–419 (2022). Or it may be

―――――――――

[4] The Seventh Circuit has embraced both rules since at least 1998. See *Baltimore & Ohio Chicago Terminal R. Co.* v. *Wisconsin Central Ltd.*, 154 F. 3d 404, 407 (1998) (adopting today's result for pre-existing suits); *Minor* v. *Prudential Securities, Inc.*, 94 F. 3d 1103, 1106–1107 (1996) (adopting the *Badgerow* rule for freestanding actions). The Third Circuit is similar. See *Goldman* v. *Citigroup Global Markets, Inc.*, 834 F. 3d 242, 252–255 (2016) (explaining that the Third Circuit has applied the *Badgerow* rule for freestanding actions since at least 1994); *Freeman* v. *Pittsburgh Glass Works, LLC*, 709 F. 3d 240, 246 (2013) (adopting today's result for pre-existing suits).

because securing a postarbitration federal forum is not all that valuable to parties who, on the front end, do not know whether they will emerge from arbitration a winner or loser and thus may not be able to tell which forum's law might prove most advantageous. Either way, there is no evidence suggesting that Jules's concerns about manufactured federal jurisdiction will come to pass. There thus seems to be little risk that confirm-or-vacate litigation will flood federal courts. The "typical FAA application" under §9 and §10, after all, likely involves those who adhered to their arbitration agreements to begin with. *Badgerow*, 596 U. S., at 15.

Nor is it anomalous for federal jurisdiction to turn, at least in part, on the happenstance of how litigation proceeded. "[A]ctual litigation" generally "define[s] the parties' controversy," even if "events could have unfolded differently." *Vaden*, 556 U. S., at 68. "[A] party's ability to gain adjudication . . . in federal court often depends on how that question happens to have been presented." *Ibid.*, n. 17; see, *e.g.*, *Kokkonen*, 511 U. S., at 380–382 (explaining that jurisdiction may depend on whether a court happened to "retain jurisdiction" expressly over a settlement agreement).

In any event, even if Jules's policy concerns had some merit, there are countervailing concerns on the other side. Jules's rule would significantly diminish "the supervisory role that the FAA envisions for the courts," *Spizzirri*, 601 U. S., at 478, by forcing them to stay proceedings under §3 for essentially no reason in most cases. It would also undermine the efficiency interests at the heart of the FAA by forcing parties who were previously in federal court (often, as here, against their wishes) to launch a fresh state-court proceeding, complete with "a new filing fee," to secure confirmation or vacatur of an arbitral award. *Ibid.*; cf. *Hall Street*, 552 U. S., at 588 (noting that §§9–11 "substantiat[e] a national policy favoring arbitration" by helping to "resolv[e] disputes straightaway").

Jules's approach could also lead to unnecessarily complex dual-track litigation. Here, as is often the case when a §3 stay is needed, the parties disputed not only whether the arbitral award should be confirmed or vacated, but also whether the dispute was arbitrable to begin with. See Pet. App. 4a–5a. Because orders staying an action pending arbitration under §3 or compelling arbitration under §4 can generally be appealed only after final judgment, see §16(b), such appeals will usually occur only after an arbitral award issues and the claims pending in federal court are dismissed. That process neatly unfolded here: The same District Court that initially held Jules's claims to be arbitrable later confirmed the resulting award and entered judgment; then, both the arbitrability and confirmation issues went up to the Second Circuit together. Under Jules's preferred rule, however, confirm-or-vacate proceedings would likely commence in state court just as the arbitrability appeal begins in federal court. At that point, a state court may confirm an arbitral award on claims that a federal court of appeals may ultimately hold were never properly subject to arbitration in the first place.[5] It is unclear why Congress would have wanted wasteful, bifurcated, and possibly inconsistent proceedings like that.

*          *          *

In *Badgerow*, the question was whether anything in §9 or §10 of the FAA affirmatively authorized an unusual approach premising jurisdiction on claims never filed before the court. Here, the question is instead whether there is anything in the FAA that precludes the normal operation of

_____

[5] Alternatively, a district court seeking to avoid such bifurcated proceedings could continue holding the pending claims on its docket, precluding an appeal of the arbitrability issue, until the state-court confirm-or-vacate proceedings conclude, possibly months (or years) later. There is no apparent reason why Congress would have preferred these pointless, extended stays to a simple consolidated proceeding and appeal.

federal jurisdiction regarding live claims that are still pend-
ing before a federal court.  There is not.  A federal court with
jurisdiction to stay claims pending arbitration under §3 of
the FAA has the same jurisdiction to resolve motions to con-
firm or vacate a resulting arbitral award.  The judgment of
the Court of Appeals, accordingly, is affirmed.

*It is so ordered.*